**Opinion issued April 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00797-CV

_____

**ALEXANDRA BURNS, Appellant**

**V.**

**MICHAEL DONALD BURNS, Appellee**

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-26049**

---

## O P I N I O N

Alexandra Burns appeals the trial court's order denying her petition to terminate the parental rights of Michael Burns, her ex-husband and the father of their child, M.A. On appeal, she contends that the trial court erred in refusing to

terminate Michael's parental rights. Because the trial court reasonably could have concluded that Alexandra failed to establish, by clear and convincing evidence, that Michael's parental rights must be terminated, we affirm.

## Background

In 2004, approximately five months after M.A.'s birth, Michael and Alexandra separated. They divorced a little over a year later. The agreed final divorce decree named Michael and Alexandra as M.A.'s joint managing conservators. Alexandra retained the exclusive right to designate M.A.'s residence, limited to Harris County and contiguous counties; to consent to invasive medical procedures; to consent to psychiatric and psychological treatment; to make educational decisions; to receive child support; and to manage the estate of M.A. The decree specified visitation terms for Michael, and it required him to pay monthly child support, provide health insurance, and cover any additional medical expenses.

At the time of the mediation that led to entry of the agreed final decree, Michael had been diagnosed with bipolar disorder, for which he was undergoing medical treatment. Michael submitted to an evaluation by a court-ordered psychologist before the parties structured the visitation agreement. The agreed decree describes a visitation schedule with four phases. Under the first phase, Michael was to visit with M.A. two evenings each week, supervised by a relative.

2

The second phase included supervised weekday evening visits and full-day Sunday visits, to begin when Michael demonstrated that he was compliant with his prescribed medications and had regular follow-up with the prescribing psychiatrist; attended periodic counseling sessions; and completed a parenting course. After a third phase, which involved both supervised and unsupervised visitation, Michael, by demonstrating his compliance with prescribed medication through periodic blood tests, would progress to visitation according to the standard possession order applicable to parents who reside 100 miles or less apart.

Michael substantially complied with the agreed possession order for several months and proceeded beyond the second phase. He saw his son 56 times from April 2005 through June 2006. Eventually, however, his visits became more sporadic and then ceased. Michael saw his son a handful of times during the remainder of 2006 and 2007 and not at all from 2008 until the trial of this cause.

The parties disputed the reason for Michael's reduction and eventual cessation of visits with M.A. Alexandra asserted that Michael unilaterally cancelled a number of visits and failed to appear for others. Michael, for his part, responded that Alexandra had obstructed his ability to see M.A. at every turn. Michael described his tumultuous relationship with Alexandra. He testified, "I made the decision that it was better off that I wasn't in his life because there was no co-existing between [Alexandra and me]. So I made the decision, heartbreaking

3

as it was; and it was the best decision." Michael explained that he and Alexandra constantly fought about whether Michael could have visitation with M.A. For a while, Alexandra would allow Michael to have relatively easy access to M.A., then, seemingly arbitrarily, she would refuse to allow him to take the boy. Michael recounted one occasion when Alexandra would not let Michael take M.A. to meet Michael's fiancée and his friends.

Michael agreed that his decision to stop the visitation had a negative emotional impact on his son. He explained that he tried to keep in contact with his son through cards, and he left messages left on Alexandra's voicemail to tell the boy that his father loved him. Michael testified that he occasionally left gifts for his son, but he later discovered that Alexandra would relabel them so that the boy would think the gift was from her or someone else.

Alexandra testified that Michael had often expressed a willingness to sign papers to relinquish his parental rights to their son. Michael, on the other hand, denied that he was willing to relinquish his rights and expressed a desire to regain a connection with his son. Michael never signed a voluntary relinquishment of his parental rights. The evidence at trial showed that Michael had complied with his financial child support obligations under the agreed decree, even during the periods where he did not visit M.A.

After considering this disputed evidence, the trial court denied Alexandra's request to terminate Michael's parental rights.

## Discussion

Alexandra contends that the trial court erred in its decision because she established that (1) Michael has endangered M.A. by his absence from M.A.'s life for the past five years, and (2) termination would be in M.A.'s best interest and would allow for his adoption by her current husband, who by all accounts in the record has ably parented M.A. in Michael's absence.

### *Standard of review*

A parent's rights to the "companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Mindful of this interest, the Legislature requires that a petitioner seeking to terminate a parent's rights prove, by clear and convincing evidence, first, that the parent has committed one or more of the acts or neglectful omissions enumerated under Family Code section 161.001(1) and, second, that termination is in the best interest

of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

Alexandra challenges the legal and factual sufficiency of the evidence supporting the trial court's decision. As the petitioner, she bore the burden to prove the one of the grounds for termination by clear and convincing evidence. Because she challenges the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, Alexandra is entitled to reversal based on legal insufficiency if the evidence establishes, as a matter of law, all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Brown v. Brown*, 236 S.W.3d 343, 349 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider evidence and inferences supporting the trial court's findings, and we ignore inferences to the contrary. *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992); *Sterner*, 767 S.W.2d at 690.

We set aside the finding as factually insufficient only if the evidence that supports it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyer v. Cotton*, 333 S.W.3d 703, 709 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We

6

defer to the factfinder's resolution of contested evidence and its decision concerning the weight and credibility to accord to each witness's testimony. *Dyer*, 333 S.W.3d at 709.

For a factual sufficiency review in the context of a proceeding to terminate parental rights, a reviewing court must consider the heightened burden of proof necessary to establish a ground for termination. *See In re J.F.C.*, 96 S.W.3d 256, 264–66 (Tex. 2002). Clear and convincing evidence—not simply a preponderance of the evidence—is the threshold for terminating a parent's right to his child. Given this higher burden of proof, we review the entire record, including both evidence supporting and evidence contradicting the finding, and determine whether the trial court's failure to form a firm conviction or belief that a parent's rights must be terminated is contrary to the overwhelming weight of the evidence and clearly wrong. *See id*; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). The Amarillo Court of Appeals similarly considered the appropriate standard of review for a factual-sufficiency challenge like this one in *In re A.L.D.H.*. 373 S.W.3d 187 (Tex. App.—Amarillo 2012, pet. denied). There, the appellants, relatives of the mother, appealed the denial of their petition to terminate the mother's parental rights to her newborn child. *Id.* at 190. The appellate court reviewed the evidence to determine whether it was "of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of the

7

child." *Id.* at 193. We examine the record in this case in light of the high evidentiary burden that Alexandra bore and our required appellate deference to the trial court's decision that the evidence did not meet it.

### *Endangerment*

Alexandra sought termination of Michael's parental rights pursuant to subsection 161.001(1)(E) of the Texas Family Code, which provides that a parent's rights can be terminated when he has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). "'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *Jordan v. Dossey*, 325 S.W.3d 799, 723 Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). A child is endangered when the environment creates a potential for danger that the parent disregards. *Jordan*, 325 S.W.3d at 721; *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). "Endanger" means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment, but the endangering conduct need not be specifically directed at the child. *See Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

According to Alexandra, Michael judicially admitted that he endangered the child's emotional well-being by not visiting him after 2008, which conclusively proves that Michael engaged in conduct proscribed by section 161.001(1)(E) of the Family Code. A judicial admission is an assertion of fact, usually found in pleadings or stipulations of the parties, that acts as a formal waiver of proof. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A party's testimonial declarations which are contrary to his position generally are admissions, but they are not outcome-determinative judicial admissions. *Id.* Testimonial admissions are not absolutely conclusive upon the admitter; rather, a factfinder may consider their evidentiary weight in light of other evidence. *Id.* Courts treat a testimonial admission as a judicial admission, however, if it appears that:

(1) the testimony relied upon was made during the course of a judicial proceeding;

(2) the testimony is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving it;

(3) the testimony is deliberate, clear, and unequivocal, and not merely a mistake or slip of the tongue;

(4) giving the testimony conclusive effect would be consistent with the public policy that it would be unjust to allow a party to recover after he has sworn himself out of court; and

(5) the testimony is not also destructive of the opposing party's theory of recovery.

*Id.* at 694; *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Alexandra relies on the following excerpt from Michael's testimony to contend that he has judicially admitted that he endangered his child:

Q. But you admit that disappearing from your son's life had a detrimental effect on his emotional well-being; correct, sir?

A. I never disappeared.

Q. Correct.

A. No.

Q. You said earlier that it did.

A. I didn't disappear.

Q. Well, your not seeing your son for the past five years has had a detrimental effect on your son's emotional well-being, hasn't it?

A. I can't answer it.

Q. Well, you did earlier. You said "yes."

A. Oh, I can say yes. I mean, obviously he's my son, I would rather be with him; but I had to make a decision. And it's not [one] I did lightly.

Q. Okay. And . . . one of the grounds that Ms. Burns has for terminating your rights is that you engaged in conduct that endangers the emotional well-being of the child. And you've done that, haven't you, sir? You've engaged in conduct—by not seeing him—that endangers his emotional well-being, haven't you? Isn't that a "yes"?

A. Can you say that question one more time, please?

Q. That by not seeing your son, you engaged in conduct that endangers his emotional well-being. You answered "yes" to that earlier. Why are you thinking about it now?

A. Because it's a big decision I have to make because it goes on the record. I can say yes. Yes.

10

Q.    Okay.

A.    I realize that.

Q.    So you've engaged in conduct that endangers the emotional well-being of your son?

A.    I had to do it, so that it wouldn't endanger him further.

. . .

Q.    Okay. Tell the Judge why it's not in [your son's] best interest to have your rights terminated.

A.    Because he will never know who I am and know how hard I fought for him this whole time and know what I've gone through to make a decision to walk away from [him] knowing it's a better decision at the time . . . . I've gone through it with [Alexandra] since day one. It's always a battle. It's never easy. There is no compromise. There is no right or wrong with her. I'm always wrong. . . . I feel like my son has been kidnapped from me. And it doesn't matter if I fulfill all the orders she wants me to fulfill, she'll still make another order. Go look through the court documents. It's one thing after another.

Read in context, Michael's acknowledgment that his absence from M.A.'s life "endangers [M.A.]'s emotional well-being" is a testimonial admission, but it is not the kind of unequivocal statement that amounts to a judicial admission. Michael explained that he considered both his difficulties with M.A.'s mother as well as his decision to be absent from his son's life to be emotionally harmful to his son, and that he considered the decision to be absent to be the lesser harm. He continued to meet his child support obligations to M.A.

11

Alexandra testified that, after Michael's visits stopped, five-year-old M.A. was fearful of being alone in his room at night for a period and questioned why his father was not visiting. Alexandra responded to M.A. that his father was not mentally well but loved M.A. as much as he could. Eventually, M.A. stopped asking questions. M.A. is a good student, and Alexandra did not testify to any mental or emotional difficulties that required professional treatment.

Because the parties disputed both the reasons for, and effect of, Michael's absence from M.A.'s life, we hold Alexandra cannot establish that Michael's rights must be terminated as a matter of law. *See In re E.N.C.*, 384 SW3d 796, 805 (Tex. 2012) (holding that parental absence in context of deportation or incarceration, standing alone, does not prove endangerment). As Alexandra has not prevailed in demonstrating grounds for termination, as required by the Family Code, we do not reach her further contention that she has conclusively proved that termination was in M.A.'s best interest. A strong presumption exists that a child's best interests are served by preserving the parent-child relationship, where possible. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE. ANN. § 153.13(b)); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

## Conclusion

The record does not dictate that Michael's parental rights be terminated as a matter of law, nor does it convey a definite and firm belief that it be done, such that the trial court's decision to the contrary is clearly wrong and manifestly unjust. We therefore affirm the order of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.