**Opinion issued February 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00635-CV

————————————

**D. PATRICK SMITHERMAN, Appellant**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-10256**

---

## O P I N I O N

The Commission for Lawyer Discipline sued David Patrick Smitherman, an attorney. It alleged that Smitherman failed to provide a client with an accounting of funds received in settlement of the client's claims and failed to distribute the undisputed portion of those funds to the client, in violation of Rules 1.14(b) and

1.14(c) of the Texas Disciplinary Rules of Professional Conduct, respectively. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app'x A, art. 10, § 9, R. 1.14(c) (West 2013). After a jury found in favor of Smitherman, the trial court granted the Commission's motion for judgment notwithstanding the verdict and entered a judgment of partially-probated suspension of Smitherman's license to practice law. Smitherman appeals, and we affirm.

## Background

### A. Smitherman's Representation of Brad Perry

The case before us arises out of Smitherman's representation of three clients—Brad Perry, John Ogren, and Chester Smitherman, Smitherman's father—in litigation against PetroSearch Energy Corporation, a company in which each of the clients owned an interest. For Smitherman's representation, he charged the clients an hourly fee. Each client held an interest in the suit and bore costs and attorney's fees in proportion to his ownership of PetroSearch. Perry and Chester, however, later acquired Ogren's interest in the suit. As a result, Perry held a 66.675 percent stake in the litigation, while Chester held the remaining 33.325 percent.

During the course of the PetroSearch litigation, Perry offered to pay Smitherman a bonus on top of his hourly fee, upon resolution of the litigation.

2

According to Smitherman, this discussion arose in the context of a discussion of unpaid invoices that Smitherman had sent to Perry for his services. Perry and Smitherman did not discuss any amount for the bonus when Perry first mentioned the possibility of paying one.

The clients ultimately settled their dispute with PetroSearch for $550,000. In early October 2008, PetroSearch's insurer paid that amount to Perry and Chester in the form of a check to Smitherman's law firm. After Smitherman deducted his fees and expenses related to the litigation from the settlement funds, Perry's share of the settlement came to approximately $271,000.

## B. Smitherman and Perry's Bonus Dispute

On October 4, 2008, Smitherman sent an email to Perry and Chester, in which he complained that Perry owed a balance on his fees[1] and wrote:

> Brad, you mentioned to me several months ago that when this was all said and done you were going to pay me a bonus. Do you recall that conversation on the phone? How much will you be paying to me in the form of a bonus as you indicated to me. [sic] I obviously relied upon this promise in doing all the hard work I did and foregoing other jobs during the past several months.

That same day, in another email, Smitherman wrote,

> Brad, please advise as to what bonus you propose to pay me. Unless we reach an agreement (which I am sure we will), I might have to withhold your funds until we can agree on an amount.

---

[1] As discussed below, Perry acknowledged that he owed Smitherman a balance of $2,738.47 for previously-invoiced fees and agreed to pay that amount. The parties treated those fees as separate from any bonus that might be paid.

3

On October 6, 2008, Perry and Smitherman discussed the amount of the bonus via telephone. The next day, Smitherman wrote in an email,

> This e-mail is a follow-up to our conversation yesterday.
> . . . .
> You mentioned a $5K bonus. I laughed and told you $20K. Posturing, you said that was "staggering". And yet in the same breath you extoll how great my services were in this case. Thank you. But you don't get something for nothing.
> . . . . In the end, perhaps sensing my displeasure with you, on several occassions [sic] you said that you would work something out with me to cover the thousands you failed and refused to pay me. You then mentioned the bonus, which I said ok to. You never said that you would only pay me a bonus if we got a multi-million dollar settlement as you mentioned yesterday. That is revisionist history. Your exact words were that you would pay me a bonus when "this was all over". You are now reneging on that promise.
> . . . .
> You said you "would sleep on it". I hoped [sic] you didn't sleep at all. $20K was not a request Brad. That is the very least of what you owe me. You think I would forego thousands in fees, put thousands more in expenses on my card, risk my professional reputation, and endure great personal stress for a paltry $5K bonus? That is a joke.
> . . . .
> I will not be releasing your funds to you until this is resolved. Of that I am not joking, rest assured.

In a subsequent exchange, Smitherman raised the amount of his demand:

> I received the settlement sum today. It will take five business days to clear. If we have not resolved this, I will not release your funds to you. Rather, I will put them in escrow.
> I now thing [sic] that I deserve at least a $30K bonus from you. You should not attempt to barter with me. I have earned it.

Perry responded by sending Smitherman a letter on October 12, 2008, in which he wrote,

4

With regard to my offer to give you a bonus at the end of the case, I did make such an offer, but no amount was offered nor discussed. It is my belief that such a bonus is completely discretionary on my part, both as to whether one is paid and as to how much, if paid, will be given. That being said, I will honor my verbal offer of $5,000 which I made you on the telephone last week. At the time I told you that I thought you deserved a bonus, I did and do believe that you did a very good job on the law suit and I was proud of your efforts.

. . . .

I consider your demand first for $20,000 and then subsequently $30,000 bonus to be at best, unprofessional, and [at] worst attempted extortion.

. . . .

[Y]ou are authorized by me to withhold, in addition to your legitimate legal fees and documented expenses a total bonus of $5,000 plus $2,738.47 [for previously-invoiced fees] for a total of $7,738.47. I believe this is a fair offer. I expect the balance of my portion of the settlement funds and a corrected set of invoices with a settlement sheet showing all disbursements not later than Wednesday, October 14, 2008 at 5:00 PM.

I will be happy to discuss any part of this letter, but it does not change my demand for timely payment.

Smitherman responded later that day, accusing Perry of being "a fraudster"

and writing,

You are so full of bull.

I now believe the bonus should be $50K. I am very disappointed in you Brad. We obviously have ourselves a dispute.

. . . . When we discussed your nonpayment of my invoices over the last year, you brought up the bonus as a way of resolving your failure to pay me. I agreed and allowed you to stay in the suit, with the expectation of a real bonus.

Your bonus is not within your discretion as you say. I have been working for you on a contingency basis, de facto.

. . . .

5

I will not, repeat will not be releasing your funds to you until this is resolved. John and dad will be receiving their checks next week when the funds are released to me. You will obviously not.

Smitherman also wrote additional responses to the letter, which included the following statements:

- Brad, this money will stay in escrow until you agree to my $50 bonus. You have not paid me any fees Brad, as you know. Your take under the settlement of $550,000 would have been approximately $363,000 (without accounting for my fees). Assuming a 40% contingency fee, which is standard, I would have taken $145,000 from your take. Again Brad, you breached our agreement by not paying me. The hourly fee is out the door. I am just using it now in an effort to settled. [sic]
- If you don't settle on my terms (pay what you owe, plus $50K bonus), and we take this to the next step, I will sue you for the contingency fee bonus. I will file a declaratory judgment action against you sir. You know I have filed these before. And I am not bound by the confidentiality agreement.
- Seriously consider what I told you Brad. I am quite serious in what I say.
- You could have accepted my $20K offer. You did not. Now it is at $50K. Next I will be seeking my contingency fee.

On October 16, 2008, Smitherman disbursed Chester's share of the settlement proceeds. Although Ogren was no longer part of the suit, he had advanced certain expenses of the litigation, so Smitherman also sent a check to him to reimburse him for those amounts. That same day, Perry requested a "final accounting showing the fees and expenses that will be deducted from the proceeds, excluding any bonus," as well as copies of the check from PetroSearch's insurance company. Smitherman responded,

6

> I can prepare an accounting, but I will charge you for my time. I don't consider preparing an accounting for you to be a good use of my time, so you alone will be charged for it as you alone are requesting it. Please be advised that I can't prepare an accounting until all payments (except yours) are made. It may take some of the checks I disbursed today a week to clear.

Smitherman reiterated,

> As stated previously, I will not be releasing your funds to you until we resolve our dispute. Please be advised that your letter of engagement contains an arbitration provision. Any dispute is to arbitrated. [sic] You will need to obtain your own counsel for that should you choose that option. Should you choose any course of action other than arbitration, you will be in breach of contract.

Perry retained another attorney, Richard Bergner, to assist him in recovering his share of the PetroSearch settlement from Smitherman. Bergner sent a letter to Smitherman on October 22, 2008, in which he authorized Smitherman to withhold the amount of Smitherman's outstanding invoices to Perry. He also wrote,

> In addition, Mr. Perry is willing to place in escrow, subject to his and your joint control, an additional sum of Fifty Thousand Dollars ($50,000.00) from his portion of the settlement proceeds, to be held in trust subject to a good faith negotiation to determine, if possible, the amount of a bonus payment for you. . . .
> The remainder of Mr. Perry's funds must be remitted to him immediately, together with a copy of the settlement check tendered to you by the Defendant's counsel in this case.

The letter also referred to Smitherman's "unauthorized withholding of Mr. Perry's portion of the settlement funds, . . . a violation of your fiduciary duty to him," and threatened to bring a claim for breach of fiduciary duty and other, unspecified, tort claims, should arbitration become necessary.

7

In response, Smitherman threatened to sue Perry for "fraud, breach of contract, and quantum meruit, among other things." Smitherman continued,

> Your claim that I have violated any fiduciary duty is laughable. A, I am no longer his lawyer. B, this is a fee dispute.
> Should I seek fraud, [sic] I will seek to claim the entire amount of what you refer to as Perry's portion of the settlement.
> . . . .
> I will release no funds to Perry until this is resolved.

Perry sued Smitherman in 2009. In the resulting settlement, Smitherman received $51,000, and Perry received the remainder of his portion of the PetroSearch settlement funds in late 2009. Until his settlement with Smitherman, Perry did not receive any money from the PetroSearch settlement.

## C. The Disciplinary Action

Perry filed a grievance with the Office of the Chief Disciplinary Counsel of the State Bar of Texas in March 2009. The Commission then sued Smitherman, alleging that he violated two rules of the Texas Disciplinary Rules of Professional Conduct. The only rule relevant to this appeal, Rule 1.14(c), provides,

> Rule 1.14 Safekeeping Property
> . . . .
> (c) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and [an]other person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest. All funds in a trust or escrow account shall be disbursed only to those persons entitled to receive them by virtue of the representation or by law. *If a dispute arises concerning their respective interests, the portion in dispute shall be kept separated by the lawyer until the dispute is*

8

*resolved, and the undisputed portion shall be distributed appropriately.*

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c) (emphasis added).

The case proceeded to trial,[2] and the trial court submitted two questions to the jury. First, it asked whether Smitherman failed to render promptly a full accounting of the PetroSearch settlement funds, in violation of Rule 1.14(b). *See* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app'x A, art. 10, § 9, R. 1.14(b) (West 2013). The jury answered that he did not. The second question, addressing Rule 1.14(c), asked, "With regard to the $550,000.00 in settlement funds in which both David Patrick Smitherman and R. Bradford Perry claimed interests, did Mr. Smitherman fail to appropriately distribute the undisputed portion of the funds?" Again, the jury answered, "No."

The Commission moved for judgment notwithstanding the verdict, arguing that the evidence raised no genuine issue of material fact as to whether Smitherman violated Rule 1.14(c). Specifically, the Commission argued that the evidence conclusively proved that Smitherman failed to distribute the PetroSearch settlement funds appropriately. The Commission's motion recited the factual history of the bonus dispute between Perry and Smitherman and argued that

---

[2] Smitherman sought mandamus review of the trial court's denial of his motion to dismiss the disciplinary action, which we denied. *In re Smitherman*, No. 01-13-00203-CV, 2013 WL 1738224, at *1 (Tex. App.—Houston [1st Dist.] Apr. 19, 2013, orig. proceeding) (mem. op.).

9

Smitherman "had a choice as to what to do in regard to Perry" on October 16, 2008, the date on which Smitherman disbursed funds to his other PetroSearch clients and reiterated his refusal to disburse funds to Perry. According to the Commission, while as much as $50,000 of the settlement funds might have been in dispute, the remainder was undisputed. It concluded,

> By . . . not giving any settlement funds to Perry on the same day that he gave funds to the other owner of the lawsuit, there is no genuine issue of material fact regarding Respondent's failure to appropriately distribute the undisputed portion of the settlement funds. Therefore, as a matter of law, Respondent violated Rule 1.14(c) on October 16, 2008.

The trial court granted the motion, entering an interlocutory judgment notwithstanding the verdict that Smitherman violated Rule 1.14(c).[3] It entered a final judgment suspending Smitherman's license to practice law for three years, two active and one suspended, and imposing additional continuing legal education requirements.

---

[3] It also found that, as a matter of law, Smitherman committed professional misconduct as defined by the Texas Rules of Disciplinary Procedure, *see* TEX. R. DISCIPLINARY P. 1.06(W), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app'x A-1, R. 1.06(W) (West Supp. 2014), and violated Article Ten, Section 9, of the State Bar Rules, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app'x A, art. 10, § 9. The latter consists of the Disciplinary Rules of Professional Conduct. Smitherman does not challenge the trial court's findings with respect to these rules. He did file an interlocutory appeal of the trial court's order, which we dismissed for want of jurisdiction. *Smitherman v. Comm'n for Lawyer Discipline*, No. 01-13-00428-CV, 2013 WL 2948384, at *2 (Tex. App.—Houston [1st Dist.] June 13, 2013, no pet.) (mem. op.). He also sought mandamus review of the interlocutory judgment, which we denied. *In re Smitherman*, No. 01-13-00603-CV, 2013 WL 3866670, at *1 (Tex. App.—Houston [1st Dist.] Jul. 19, 2013, orig. proceeding) (mem. op.).

**Judgment Notwithstanding the Verdict**

Smitherman first argues that the trial court erred in entering its judgment because sufficient evidence supported the jury's verdict and because Smitherman did not receive fair notice of the Commission's claims.

## A. Standard of Review

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard, "credit[ing] evidence favoring the jury verdict if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (quoting *Central Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)); *Williams v. Dardenne*, 345 S.W.3d 118, 123 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

## B. Applicable Law

The Commission was entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law and evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a

vital fact. *Tanner*, 289 S.W.3d at 830; *City of Keller*, 168 S.W.3d at 810; *Williams*, 345 S.W.3d at 123.

Rule 1.14(c) states, "If a dispute arises [in the course of representation] concerning [the] respective interests [in property claimed by both a lawyer and another person], the portion in dispute shall be kept separated by the lawyer until the dispute is resolved, *and the undisputed portion shall be distributed appropriately*." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c) (emphasis supplied). A comment to the Rule states, "[A] lawyer may not hold funds to coerce a client into accepting the lawyer's contention." *Id.* at cmt. 2.

## C. Sufficiency of the Evidence

Smitherman first argues that the trial court erred in granting judgment notwithstanding the verdict because sufficient evidence supported the jury's verdict. He contends that the trial court based its judgment on evidence and arguments never submitted to the jury.[4]

The evidence at trial conclusively demonstrated that Smitherman and Perry disputed Smitherman's entitlement to any particular amount as a bonus, and the

---

[4] Many of Smitherman's arguments only explicitly address the interlocutory judgment. The interlocutory order merged into the final judgment and can only be challenged as such. *See, e.g.*, *Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex. 2011) ("The final judgment necessarily replaced the interlocutory order, which merged into the judgment . . . ."). Smitherman's brief treats the interlocutory and final judgment interchangeably. We note that the interlocutory and final judgments explicitly relied upon the same factual findings. For these reasons, we consider Smitherman's arguments as they apply to the final judgment.

most that Smitherman ever offered was $5,000. Smitherman demanded bonuses in varying amounts over time, but nothing in the record suggests that Smitherman ever believed that the amount of any bonus would exceed $50,000.[5] Rather, Smitherman claimed that the entirety of Perry's share of the settlement was in dispute precisely because the parties disputed a portion thereof, not because Smitherman actually claimed that he was entitled to all of it. The evidence also conclusively demonstrated that Smitherman explicitly refused, on at least five occasions, to release any funds to Perry until Perry paid him a bonus, and Smitherman repeatedly and unilaterally increased the amount that he demanded. The evidence further conclusively showed that Smitherman did not release any PetroSearch settlement funds to Perry until approximately a year after Smitherman received them, and then only to settle Perry's lawsuit against him. Thus, the evidence conclusively showed that Perry and Smitherman disputed only a portion of Perry's share of the PetroSearch settlement, but Smitherman failed to distribute the undisputed portion appropriately, instead withholding funds in an attempt to

---

[5]  While he threatened to seek a contingency fee rather than his agreed hourly rate, nothing in the record suggests that he was entitled to a contingency fee, much less that such a fee would encompass Perry's entire share of the settlement. And while Smitherman threatened to sue Perry for fraud and seek Perry's entire share of the settlement, any such dispute would have been distinct from the bonus dispute and would not give Smitherman the right to withhold the settlement proceeds. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c), cmt. 2.

coerce Perry into accepting Smitherman's position. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c), cmt. 2.

Smitherman nevertheless raises numerous arguments challenging the judgment notwithstanding the verdict, which we address in turn.

*1.    Timing of the Violation*

First, Smitherman argues that the motion for judgment notwithstanding the verdict turns entirely on the allegation that he violated Rule 1.14(c) on October 16, 2008, the date on which Smitherman distributed funds to his father and Ogren but reiterated his refusal to release funds to Perry. According to Smitherman, the motion fails to mention evidence at trial regarding later events, such as the October 22, 2008, demand letter from Bergner, the attorney Perry hired after Smitherman refused to release Perry's funds. Smitherman argues that his actions on October 16, 2008, formed "the entire basis for the [Commission's] claim on Rule 1.14(c)" in the motion, but that the Commission never alleged in its live petition that Smitherman violated the rule on October 16, 2008. We disagree.

While the Commission's petition mentions the Bergner letter, it also mentions the events of October 16, 2008, and various other dates, concluding that Smitherman violated Rule 1.14(c) "[b]y refusing to distribute any part of the [PetroSearch] Settlement Funds to Perry in the fall of 2008." Neither the petition nor the evidence at trial focused on events on or after Bergner's October 22

14

demand letter to the exclusion of events on prior dates. We also disagree that the motion for judgment notwithstanding the verdict must be read so narrowly. Although it alleges a violation of the rule on October 16, it does so in the context of an argument that later events cannot excuse that conduct; it does not argue that the only such violation occurred on that date.

Smitherman also argues that the evidence showed that his October 16, 2008 disbursements to Chester and Ogren and his refusal to disburse funds to Perry on that date have no relevance to the alleged Rule 1.14(c) violation. He suggests six theories in support of this argument, which fall into two categories. First, he argues that he could not have violated Rule 1.14(c) if, as the Commission alleged, he also failed to account for Perry's funds correctly. Second, he insists that he could not possibly have released any money to Perry until he received Bergner's letter or some other indication of the amount in dispute, but that Bergner's letter put all of the money in dispute. The evidence at trial, however, conclusively established that the fee to which Smitherman claimed to be entitled never exceeded 40% of Perry's recovery, the amount he threatened to seek as a contingency fee. And a lawyer's obligation to provide an accounting to a client who requests one is independent of the obligation to deliver the client's funds promptly. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(b). More to the point, nothing in Texas law conditions a lawyer's obligation to act ethically toward his client on whether

15

that client's new counsel has explicitly suggested the proper course of action. Smitherman's obligation to distribute undisputed funds to Perry existed before and independently of Bergner's demand letter. Accordingly, we reject this set of arguments.

### 2. *Purported Admissions by the Commission*

Smitherman next argues that the Commission admitted in closing argument that he acted appropriately in not disbursing funds to Perry on October 16, 2008. As support, Smitherman points to counsel's argument that Smitherman should have done what Bergner suggested in his October 22, 2008 demand letter: hold $50,000 in escrow and release the remaining funds to Perry. According to Smitherman, this constitutes an admission that his behavior on October 16, 2008, was appropriate, and the Commission thereby conceded that no violation occurred until at least October 22, 2008. We disagree. The argument contains no such admission, but merely states the minimum level of disbursement that might have been acceptable under Rule 1.14(c), which Smitherman could have made as easily on October 16 as at a later point.

Smitherman also contends that the Commission judicially admitted that no violation occurred on October 16, 2008. As support, he points to the Commission's petition, arguing that in it the Commission "acknowledges . . . that

[Smitherman] had until late November of 2008 to make [the required] distribution to Perry."

"A judicial admission must be a clear, deliberate, and unequivocal statement." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996)). Such an admission "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary." *Id.* (quoting *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 884 (Tex. App.—San Antonio 1996, writ denied)).

Smitherman does not identify any particular language in the Commission's petition that he contends constitutes a judicial admission regarding the timing of the violation. Based on our own review, the only relevant statement in the petition is that Smitherman "should have given approximately $221,000.00 to Perry in late October or early November of 2008." This is a statement of alternative theories, not a clear, deliberate, and unequivocal statement that no violation occurred on October 16, 2008. It is also a statement of a legal theory, while a true judicial admission must be "a formal waiver of proof" as to a fact. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980); *see also Burns v. Burns*, 434 S.W.3d 223, 228 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("A judicial admission is an assertion of fact, usually found in pleadings or stipulations

17

of the parties, that acts as a formal waiver of proof."). We reject Smitherman's argument regarding judicial admissions.

Smitherman also argues that the Commission admitted during an August 2010 hearing on his motion for partial summary judgment that fact issues existed regarding whether he violated Rule 1.14(c). According to Smitherman, this is an admission that the Commission could not prove a violation of Rule 1.14(c). We reject this argument; the demonstration of fact issues at the summary judgment stage does not necessarily control what the evidence at trial may show. To hold otherwise would mean that a litigant who shows that a genuine issue of material fact exists before trial of a case could never obtain summary judgment, directed verdict, or judgment notwithstanding the verdict. We therefore reject this argument. *See*, *e.g.*, TEX. R. CIV. P. 279 (parties may raise argument that evidence is legally or factually insufficient to support submission of jury question for first time after verdict, even if question was requested by complainant).

### 3. *Incorrect Standard*

Finally, Smitherman argues that the trial court applied an incorrect standard in granting judgment notwithstanding the verdict because it made the statement, "The evidence is clear, there were undisputed funds and that they were not timely paid to Mr. Perry by Mr. Smitherman." As a threshold matter, we note that Smitherman does not provide any citation to the record where the trial court made

18

this statement, whether orally or in writing; it appears to exist only in his own request for preparation of the reporter's record. Because Smitherman requested a partial reporter's record, we must presume that the record relevant to this issue "constitutes the entire record for purposes of reviewing the stated points or issues." TEX. R. APP. P. 34.6(c)(4). "This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue." *Id.*

Smitherman has not shown that the trial court applied the wrong standard. Further, we review the trial court's application of the law to the facts de novo, and we have found no error in the standard applied. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011); *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002); *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 396 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Smitherman also argues throughout his brief that Perry's threat to sue Smitherman in his personal capacity somehow excused or even compelled Smitherman's failure to comply with Rule 1.14(c). Smitherman cites no legal authority in support of this argument. On the contrary, comments to Rule 1.14(c) teach that a lawyer may not use funds as leverage in a dispute with a client. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(c), cmt. 2. Smitherman had no claim to Perry's share of the PetroSearch settlement funds in excess of, at most, 40% of

Perry's recovery plus the $2,738.47 in outstanding fees, regardless of any threat of litigation between Perry and Smitherman. We reject Smitherman's argument that his violation of Rule 1.14(c) could be excused by the threat of a lawsuit over that very violation.

The record demonstrates that the Commission was entitled to judgment notwithstanding the verdict. The evidence in the record conclusively shows that Smitherman not only failed but explicitly and repeatedly refused to comply with his obligations to his client under Rule 1.14(c). Accordingly, we overrule Smitherman's evidentiary sufficiency arguments and hold that the trial court did not err in granting judgment notwithstanding the verdict.

## D.    Date of Violation

Smitherman also argues, in a separate issue, that he did not receive fair notice of the Commission's claims. He argues that the Commission never alleged until after trial that Smitherman violated Rule 1.14(c) on October 16, 2008.

Texas applies a "fair notice" pleading standard. In an attorney-discipline proceeding, the petition must contain "[a] description of the acts and conduct that gave rise to the alleged Professional Misconduct in detail sufficient to give fair notice to the Respondent of the claims made." TEX. R. DISCIPLINARY P. 2.17(A)(4), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app'x A-1, R. 2.17(A)(4) (West 2013); *see also Low v. Henry*, 221 S.W.3d 609, 612 (Tex.

2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004).

As we have already discussed, the Commission's petition discusses the events of October 16, 2008, and is premised on Smitherman's refusal "to distribute any part of the [PetroSearch] Settlement Funds to Perry in the fall of 2008." This is sufficiently clear to put Smitherman on notice that all dates in the fall of 2008 after he first refused to distribute such funds were at issue. *See* TEX. R. DISCIPLINARY P. 2.17(A)(4); *Low*, 221 S.W.3d at 612; *Miranda*, 133 S.W.3d at 230. The petition alleges that the first such refusal occurred no later than October 7, 2008. Thus, Smitherman had notice that the Commission's claims pertained to all dates on or after October 7, 2008, at the latest. Accordingly, we overrule this issue.

## Interlocutory Judgment

### A.    Whether the Judgment Was Void

Smitherman argues that the interlocutory and final judgments were void because the trial court did not hold an oral hearing on the motion for judgment notwithstanding the verdict and did not issue its interlocutory order in the correct venue. According to Smitherman, Section 74.094(e) of the Texas Government Code required the trial court to hold an oral hearing on the Commission's motion for judgment notwithstanding the verdict in Harris County and specifically in

Houston. Smitherman further contends that the trial court did not do so. His arguments, however, lack support in the law or the record.

Section 74.094(e) provides that "[a] judge who has jurisdiction over a suit pending in one county may, unless objected to by any party, conduct any of the judicial proceedings except the trial on the merits in a different county." TEX. GOV'T CODE ANN. § 74.094(e) (West 2013). Smitherman reasons that the motion for judgment notwithstanding the verdict was part of the trial on the merits and that the trial court effectively conducted a bench trial in another county. We reject these arguments for two reasons.

First, we note that at least one court has held that Section 74.094(e) does not apply to attorney-discipline proceedings because, unlike in other proceedings, original jurisdiction over attorney-discipline proceedings is lodged in the Supreme Court of Texas. *Acevedo v. Comm'n for Lawyer Discipline*, 131 S.W.3d 99, 104 (Tex. App.—San Antonio 2004, pet. denied).

Second, even if we were to assume that Section 74.094(e) applied to the Commission's motion for judgment notwithstanding the verdict, the record does not contain any evidence that the trial court conducted judicial proceedings related to the motion while outside of Harris County. Smitherman points to an email in which the trial court advised the parties, "I don't need to hold a hearing of any type or anywhere to decide the [Commission's] Motion for Judgment Notwithstanding

22

the Verdict." But as Smitherman concedes, this email is not in the record. We therefore cannot consider it. *Sowell v. Kroger Co.*, 263 S.W.3d 36, 38 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Till v. Thomas*, 10 S.W.3d 730, 734 (Tex. App.—Houston [1st Dist.] 1999, no pet.). We reject Smitherman's contention that the trial court conducted judicial proceedings in the wrong county.

We likewise reject the argument that the trial court's judgment is void because it did not conduct an oral hearing on the motion for judgment notwithstanding the verdict, because Smitherman was not entitled to an oral hearing on the motion. *See* TEX. R. CIV. P. 301 (governing motions for judgment notwithstanding the verdict); *City of Port Lavaca v. Fisher*, 355 S.W.2d 785, 787 (Tex. Civ. App.—San Antonio 1962, no writ) ("Rule 301 . . . does not require a hearing."); *see also Sw. Title Ins. Co. v. Northland Bldg. Corp.*, 542 S.W.2d 436, 449 (Tex. Civ. App.—Fort Worth 1976), *rev'd in part on other grounds*, 552 S.W.2d 425, 430 (Tex. 1977).

## B.     Motion for Reconsideration

Smitherman also contends that the trial court erred in denying his motion for reconsideration of the interlocutory order granting judgment notwithstanding the verdict. Smitherman asserted only one basis for reconsideration in his motion: newly-discovered information. But the "new" information to which he pointed consisted of statements that the Commission's counsel made at the hearing on

Smitherman's motion for summary judgment—held more than two years before the trial court granted judgment notwithstanding the verdict—and was therefore not, in fact, new. As we have already held, the trial court properly granted the judgment notwithstanding the verdict; it therefore did not err in refusing to reconsider that judgment.

## Sanctions

Finally, Smitherman argues that the sanctions imposed against him are too severe for a one-day violation of one part of Rule 1.14(c). As a threshold matter, we disagree with Smitherman's characterization of the violation in question. The evidence conclusively demonstrates that Smitherman violated Rule 1.14(c) continuously and deliberately for approximately one year.

Moreover, Smitherman's argument consists of nothing more than the bald assertions that the Commission should "finally come to terms with the fact that it lost at trial, and that Appellant won fair and squarely," and "[b]oth parties have perhaps learned their lessons, and should move forward." We hold that Smitherman has waived his arguments due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i).

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.