# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00121-CV

---

**Samantha Soleil Aguilar, Appellant**

**v.**

**Carrington Edvin Soliz, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-007140, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Samantha Soleil Aguilar challenges the portion of the trial court's order in a suit affecting the parent-child relationship that denied her request to terminate Carrington Edvin Soliz's parental rights to their child, C.A. In one issue, Aguilar contends that the evidence admitted at trial overwhelmingly established a statutory ground for termination of Soliz's parental rights and that termination of those rights is in C.A.'s best interest and, therefore, the evidence was factually insufficient to support the denial of termination. We will affirm.

### BACKGROUND

Aguilar and Soliz met in middle school and started dating while they were in high school. During her first year of college, Aguilar became pregnant with their child, C.A., who was born in September 2007 and was twelve years old at the time of trial. Before Aguilar became pregnant, Soliz was not employed but made money selling marijuana. When Aguilar

learned she was pregnant, she asked Soliz to stop selling marijuana and he complied. Aguilar testified that Soliz's mother was upset at the loss of income to the family from marijuana sales and began selling marijuana herself. Aguilar stated that although Soliz only smoked marijuana and drank alcohol before her pregnancy, during her pregnancy he started using other drugs. Aguilar recounted that when she went to the hospital to deliver C.A., Soliz's mother insisted on being present in the delivery room and was very angry when Aguilar said she only wanted Soliz in the room with her. Soliz's mother and nieces were ultimately escorted out of the delivery wing and Aguilar decided to have only her mother in the delivery room with her because she believed that Soliz was upset that Aguilar had prevented his mother from being in the room. Aguilar testified that the delivery was emotionally difficult because of the situation with Soliz and his mother and that shortly after she delivered C.A., she ended her relationship with Soliz. Aguilar stated that she tried to make the relationship work for C.A.'s sake but that it "just didn't work."

Aguilar testified that she encouraged C.A. to have a relationship with Soliz and that she wanted him to know his father and his father's family. Although she was concerned about the condition of the Soliz family home, she allowed C.A. to spend weekends there with his father. Aguilar testified that the Soliz family home was old and not well maintained and that there were fleas and mosquitos present. Aguilar stated that C.A. returned from some visits with lice and flea bites. Aguilar also recounted that C.A. had told her that Soliz had given him beer to drink when he was six or seven years old. Aguilar testified that she was concerned about what she described as the Soliz "family dynamics." Aguilar stated that Soliz's father had divorced Soliz's mother so that he could marry his stepdaughter. Later, while married to Soliz's father, the stepdaughter started an extra-marital affair with her son-in-law, the husband of her daughter.

2

When Soliz's father learned of the affair sometime in 2013 or 2014, he shot and killed the son-in-law. Soliz's father attempted to flee after committing the murder but was apprehended and ultimately sentenced to prison for the murder. Aguilar testified that she believed that Soliz was charged with helping his father flee and was sentenced to several months' imprisonment. After these events occurred, Aguilar sought sole managing conservatorship of C.A. and moved C.A. from public to private school because teachers were warning her that C.A. could "be just like his dad one day." Aguilar stated that she did not want C.A. to be "compared" with Soliz and his family at school. From that time on, C.A. did not spend nights with Soliz and saw him only every other weekend.

Aguilar testified that in 2016 she told Soliz that he needed to provide C.A. with financial assistance and to "step up" as a father. Aguilar also had requested that Soliz and his family not tell C.A. that his grandfather had been convicted of murder. Despite this request, when C.A. asked her, Soliz's mother told C.A. where his grandfather was. Aguilar stated that C.A. was very upset and angry with her for not telling him about his grandfather and wanted to know the details of the murder, which Aguilar declined to provide. Aguilar was concerned that C.A. was deeply negatively impacted by hearing from his grandmother that his grandfather had committed a murder. Aguilar testified that in 2016 Soliz accused her of not wanting C.A. to be around his paternal family and then "stopped coming around." Soliz did not see C.A. from 2016 until October 2018 when he came to Aguilar's parents' house, where Aguilar and C.A. were living, and asked to see C.A. Aguilar testified that she told C.A., who was then eleven years old, that it was his decision whether he wanted to see his father and that C.A. ran into a closet and would not come out. Aguilar testified that Soliz provided only intermittent financial support and had not sought access to C.A. since 2018.

Cynthia Gonzalez, the court-appointed guardian ad litem, testified that she supported termination of Soliz's parental rights to C.A. Gonzalez conducted an investigation that included meeting with Aguilar, Soliz, C.A., and C.A.'s maternal grandparents and aunt. Gonzalez spoke with C.A.'s paternal grandparents, reviewed CPS and police records, and conducted home visits of both homes. Gonzales testified that she was concerned about Soliz's parenting ability and his ability to financially support C.A. Gonzales stated that Soliz had made some attempts to see C.A. but that she was concerned because he had not been involved in C.A.'s life since 2016. Gonzalez expressed concern about whether the Soliz family home was a good environment for a child. She also noted that Soliz's family members had a "CPS history" and "extensive CPS involvement." During trial, the court stated that it considered Gonzalez's testimony to be conclusory and asked her to explain in more detail why she believed termination of Soliz's parental rights was warranted. Gonzalez stated that C.A. is afraid of having a relationship with his father, that he "does not desire a relationship with his father," and that he is "fearful" of his father. Gonzalez testified that she believed that the Soliz family environment would be emotionally harmful to C.A. and that she was worried about the possible negative impact of C.A. being around the Soliz family. She also stated that Soliz had made little effort to see C.A., had not sought assistance from the Domestic Relations Office, had not provided any explanation for his failure to pay child support, and does not appear to be invested in C.A.'s future. Gonzalez testified that she believes Soliz is more motivated by his feeling about Aguilar than by a desire to have a relationship with his son. Gonzalez stated that C.A. is doing "really well now" and that she would hate to put him in a situation that would set him back. Gonzalez testified that, by contrast, Aguilar and C.A.'s maternal grandparents are "invested in C.A.'s future."

4

Soliz testified that, from the beginning, he felt that there was no way he would be able to maintain a relationship with C.A. Soliz stated that he and Aguilar were from "two sides of the tracks, literally," and that because he was a "trailer park kid" and she was a "two-story house girl" they were "never supposed to be together." Soliz testified that nothing his family had done for C.A. was "good enough" for Aguilar. Soliz recounted that when he made C.A. a Batman costume for Halloween, which he said that C.A. loved, Aguilar criticized him and told him to let her know in the future if he did not have enough money to buy C.A. a costume. Soliz testified that Aguilar's family treated him like an outsider, favored Aguilar's current boyfriend over him, and "kicked [Soliz] to the curb." Soliz stated that if it were Aguilar's decision, he would never be able to see his son. Soliz testified that he believes that Aguilar is a great mother and that he has no anger toward her or her family, whom he has known since he was a child and views as family. Soliz explained that he attempted to arrange to see C.A. by sending Aguilar text message requests but that the two do not have a "very civil relationship." Soliz testified that he would have loved to have spent time with C.A. but did not think he would be allowed to do so. Soliz stated that although his mother has a history with CPS, he does not. Soliz stated that Aguilar has raised C.A. on her own with her family's help by choice. Soliz acknowledged that he did not take legal action to gain access to C.A. and that his child support payments in 2015 and 2016 were sporadic but questioned whether that was a sufficient reason to terminate his parental rights to C.A.

After both sides rested, the court stated that it believed it would be in C.A.'s best interest to have a meaningful relationship with Soliz if that could be accomplished in a way that would mitigate the guardian ad litem's concerns. Several days after trial, the court sent the parties a letter stating that after considering the arguments and evidence presented, he would

5

deny Aguilar's request to terminate Soliz's parental rights but grant her request to be named C.A.'s sole managing conservator. The court stated that it intended to craft a visitation plan for Soliz that would be supervised, would not take place at the Soliz family home, and would minimize any emotional distress that C.A. might experience when reintroducing Soliz into his life. The court suggested supervised, therapeutic visitation at a court-approved facility and asked the parties and the guardian ad litem to submit their proposals to the court. Counsel for Aguilar submitted a letter stating his disagreement with the decision not to terminate Soliz's parental rights but, as the court requested, proposing that Soliz exercise his periods of possession by engaging in family reunification therapy and that he be required to take regular drug tests. The proposal provided that if Soliz provided negative drug tests for a year and if the family reunification therapist recommended it, Soliz could begin having unsupervised possession of C.A. for several hours on two Fridays of each month. The trial court signed an order that appointed Aguilar to be C.A.'s sole managing conservator and ordered that Soliz have possession of C.A. consistent with the terms proposed by Aguilar. This appeal followed.

## STANDARD OF REVIEW

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.*

6

At trial, Aguilar had the burden to show, by clear and convincing evidence, both that a statutory ground existed to terminate Soliz's parental rights and that termination was in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(1), (2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). Generally when, as here, a party challenges the factual sufficiency of the evidence supporting the factfinder's adverse resolution of an issue on which she had the burden of proof at trial, she must show that the finding was against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). However, this standard is not adequate in an appeal from the denial of a petition to terminate parental rights, where the burden of proof at trial was by clear and convincing evidence. *See Burns v. Burns*, 434 S.W.3d 223, 227-28 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re A.L.D.H.*, 373 S.W.3d 187, 192-93 (Tex. App.—Amarillo 2012, pet. denied). In cases involving the termination of parental rights, the standard is heightened, and we must review the entire record to "determine whether the trial court's failure to form a firm conviction or belief that a parent's rights must be terminated is contrary to the overwhelming weight of the evidence and clearly wrong." *Burns*, 434 S.W.3d at 227; *see In re M.I.A.*, 594 S.W.3d 595, 601 (Tex. App.—San Antonio 2019, no pet.). In conducting this review, we may not reweigh the evidence or judge the credibility of the witnesses, and we must defer to the trial court's credibility determinations so long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). "We examine the record in this case in light of the high evidentiary burden that [Aguilar] bore and our required appellate deference to

the trial court's decision that the evidence did not meet it." *In re E.J.R.*, 503 S.W.3d 536, 542 (Tex. App.—Corpus Christi-Edinburg 2016, pet. denied) (quoting *Burns*, 434 S.W.3d at 227).

## DISCUSSION

In her sole issue, Aguilar brings a factual sufficiency challenge to the trial court's denial of her request that Soliz's parental rights to C.A. be terminated. Aguilar asserts that the evidence is factually insufficient because she established by clear and convincing evidence both that there were grounds for termination and that termination of the parent-child relationship between C.A. and Soliz was in C.A.'s best interest. As stated above, however, we may sustain Aguilar's factual sufficiency challenge only if we conclude that the court's failure to form a firm conviction or belief that Soliz's rights must be terminated is contrary to the overwhelming weight of the evidence and clearly wrong. *Burns*, 434 S.W.3d at 227.

The trial court did not make any findings about whether Soliz had committed acts that constituted statutory grounds for termination. *See* Tex. Fam. Code § 161.001. Instead, it found only that terminating Soliz's parental rights was not in C.A.'s best interest. Because that issue is dispositive, we do not address Aguilar's arguments regarding statutory grounds for termination. *See* Tex. R. App. P. 47.1; *In re M.I.A.*, 594 S.W.3d at 601 (to succeed on factual sufficiency challenge to denial of termination of parental rights, party seeking termination must establish that trial court's findings on statutory ground and best interest were contrary to overwhelming weight of evidence and clearly wrong).

In deciding whether to terminate a parent-child relationship, there is a strong presumption that the child's best interest is served by maintaining the relationship between a child and the biological parent, and Aguilar had the burden to rebut that presumption. *See, e.g.*,

8

*J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 525 (Tex. App.—Austin 2019, no pet.). We consider a trial court's finding on best interest in light of the factors set out in *Holley v. Adams*: the child's wishes, if appropriate given the child's age; his emotional and physical needs now and in the future; present and future emotional or physical danger posed to the child; the parenting skills of those seeking custody; any programs available to assist those seeking custody to promote the child's best interest; plans for the child's future; the stability of the home or proposed placement; conduct by the parent that might show that the parent-child relationship is inappropriate; and any excuses for the parent's conduct. 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors are not exhaustive and not all factors must be proved. *D.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00557-CV, 2021 WL 1418986, at *1 (Tex. App.—Austin Apr. 12, 2021, no pet.) (mem. op.).

Aguilar asserts that there was clear and convincing evidence at trial that C.A. is afraid of his father and does not desire to have a relationship with him. As set forth above, Aguilar testified that in October 2018 when Soliz showed up and wanted to see C.A., she asked him if he wanted to see his father and that C.A., who was eleven years old at the time, hid in a closet and stated that he did not want to see Soliz. In her report, the guardian ad litem stated that Aguilar told her that when Soliz showed up to see C.A. that day, Aguilar asked him if he wanted to see his father and C.A. responded, "No, tell him to leave," and ran into a closet. The guardian ad litem's report also states that when she discussed the incident with C.A., he stated that he "got mad because [Soliz] just came out of nowhere after four years." The report also relates that C.A. told the guardian ad litem that he has no desire to see his father and would "feel 'sad' if a judge does not terminate his father's parental rights." At trial, the guardian ad litem testified that C.A. is "afraid of having a relationship" with Soliz and that he is "fearful of his father." Her report,

9

however, does not include an observation that C.A. fears his father. Rather, it supports the notion that C.A. is angry about his father's absence and is wary of reestablishing their relationship. No other evidence at trial showed that Soliz ever acted in a manner that caused C.A. fear. We must view the "desires of the child" factor "[i]n light of the high evidentiary burden that [Aguilar] bore and our required appellate deference to the trial court's decision that the evidence did not meet it." *See Burns*, 434 S.W.3d at 228. Under that standard of review, we believe that the trial court could not have formed a firm conviction or belief that this factor supported termination of Soliz's parental rights and that such a finding would not have been so contrary to the overwhelming weight of the evidence as to be clearly wrong. *See id.* at 227. We also note that the trial court's possession order, which requires one year of supervised family reunification therapy, is designed to assist C.A. in overcoming any anger, anxiety, or even fear associated with reestablishing a relationship with Soliz.

Aguilar also asserts that the evidence at trial demonstrated that C.A.'s emotional and physical needs have been more than adequately met by her and her family and despite Soliz's absence from C.A.'s life since 2016. Aguilar claims that C.A. has a strong emotional support network, has multiple other "father figures," and is well cared for with food, shelter, and clothing. Aguilar states that the evidence at trial demonstrates that she has provided C.A. stability and ensured that he is well cared for emotionally and physically. There was no testimony at trial, however, that Aguilar or her family would cease caring and providing for C.A. if the trial court denied the petition to terminate Soliz's parental rights.

Aguilar argues that Soliz's family has a "dark" criminal past and that the Soliz home is physically dangerous. Aguilar also asserts that Soliz has engaged in conduct that has caused C.A. emotional and physical danger and argues that the guardian ad litem expressed

10

concerns about the condition of the Soliz home and about the behavior of Soliz's relatives. Aguilar also alludes to Soliz's past use of marijuana and other drugs. The trial court heard evidence about Soliz's conduct in the past, about Soliz's relatives' relationships, and about the state of their home. The trial court, acting as factfinder, heard this evidence and found that it did not satisfy Aguilar's high burden of proof. The trial court determined that despite the concerns raised by Aguilar and the guardian ad litem, it was in C.A.'s best interest to craft a possession order that addressed those concerns rather than to terminate Soliz's parental rights. Under the exacting standard of appellate review that we must apply here, we do not believe that this finding is so contrary to the overwhelming evidence as to be clearly wrong. *See id.*.

With regard to Soliz's lack of a current relationship with C.A., the trial court heard evidence that Soliz tried to maintain a relationship with C.A. after his family told C.A. about C.A.'s grandfather's murder conviction, but that he felt shut out and, although he would have loved to spend time with C.A., Aguilar did not allow it. Soliz described a situation in which he was treated as an outsider and felt destined to be excluded from C.A.'s life by Aguilar and her family. The trial court, as the sole judge of the weight and credibility of the evidence, could have credited Soliz's explanation regarding this issue. Under the standard of review by which we are bound, we cannot say that determination was unreasonable. *Id.* As a result, we do not believe the trial court's failure to form a firm conviction or belief that it was in C.A.'s best interest that Soliz's rights be terminated is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Id.*

11

**CONCLUSION**

Based on our review of the entire record and applying proper deference to the trial court's findings and credibility determinations, we cannot say that the trial court's failure to form a firm conviction or belief that termination of Soliz's parental rights was in C.A.'s best interest is so contrary to the overwhelming weight of the evidence as to be clearly wrong. For that reason, we overrule Aguilar's factual sufficiency challenge. We affirm the trial court's order.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:  July 2, 2021