ACCEPTED
01-17-00432-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/20/2018 2:03 PM
CHRISTOPHER PRINE
CLERK

## No. 01-17-00432-CV

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS,
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/20/2018 2:03:13 PM
CHRISTOPHER A. PRINE
Clerk

**SPORTSCAPERS CONSTRUCTION, INC.
AND RODERICK THOMPSON,**
Defendants and Appellants

v.

**EVELYN M. MITCHELL AND DOUGLAS BROWN,**
Plaintiffs and Appellees

**On Appeal from the 400th District Court
of Fort Bend County, Texas**

**APPELLEES' RESPONSE BRIEF**

**BURFORD PERRY, LLP**

Shawn A. Johnson
State Bar No. 24097056
Robert R. Burford
State Bar No. 03371700
909 Fannin St., Suite 2630
Houston, Texas 77010
Telephone: (713) 401-9790
Facsimile: (713) 993-7739
sjohnson@burfordperry.com
rburford@burfordperry.com

***ATTORNEYS FOR APPELLEES***

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Appellees include the following because Appellants' Brief does not include the required information. Tex. R. App. P. 38.1(a), 38.2(a)(1)(A).

**Appellants:** **Sportscapers Construction, Inc. and Roderick Thompson**

**Trial and Appellate Counsel:**

Troy Tindal
State Bar No. 24066198
17225 El Camino Real, Suite 190
Houston, Texas 77058
troy@tindallawfirm.com

**Appellees: Evelyn M. Mitchell and Douglas Brown**

**Trial Counsel:**

Michael V. Brophy
State Bar No. 03082630
12946 Dairy Ashford, Suite 370
Sugar Land, Texas 77478
mike@brophylawfirm.com

**Appellate Counsel:**

Shawn A. Johnson
State Bar No. 24097056
Robert R. Burford
State Bar No. 03371700
909 Fannin St., Suite 2630
Houston, Texas 77010
sjohnson@burfordperry.com
rburford@burfordperry.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................ii

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES.............................................................................vi

STATEMENT OF THE CASE...........................................................................1

STATEMENT ON ORAL ARGUMENT...............................................................2

REPLY TO ISSUES PRESENTED AND CROSS-POINTS.......................................2

STATEMENT OF FACTS ...............................................................................3

  I.     Appellees sign a contract containing a no-cause termination
  provision, under which Appellants agreed to construct a tennis court on
  Appellees' property to their specifications and in a good and
  workmanlike manner for $85,000, with half the balance due up front.4

  II.     After Appellants commence work, Appellees quickly lose
  confidence in Appellants' ability to perform in a good and workmanlike
  manner and ask that all work stop while they get the project back on
  track. When all the issues appear to be resolved, Appellants demand
  that Appellees modify the agreement by signing waivers of certain
  contractual terms. When Appellees refuse, Appellants turn the matter
  over to their attorney......................................................................7

  III.     Appellees request a refund of their deposit after terminating the
  contract, and Appellants and their attorney go silent, forcing Appellees
  to file suit. ....................................................................................9

  IV.     The lawsuit proceeds to a four-day jury trial, in which
  Appellants' counsel engages in a remarkable display of gamesmanship,
  deceit, and improper jury argument, and the jury finds that neither
  party breached the contract without reaching the damages questions
  that had been conditioned on a finding of breach..............................11

  V.     Appellants move for a take-nothing judgment, which the trial
  court later denies.........................................................................16

VI.     Appellees file a combined motion for judgment, motion for judgment notwithstanding the verdict, and motion for new trial, asking that the court apply the plain language of the contract and award Appellees their $42,500 deposit, less the "charges" Sportscapers incurred prior to their termination of the contract..............................17

VII.    The trial court grants Appellees' motion for judgment notwithstanding the verdict and, four days later, enters a final judgment awarding Appellees $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services." ......................................................................................19

SUMMARY OF THE ARGUMENT .................................................................20

ARGUMENT..................................................................................................24

I.      Appellants waived error as to the propriety of the trial court's decision to grant Appellees' motion for judgment notwithstanding the verdict by failing to produce an adequate appellate record for this Court's consideration.........................................................................24

II.     In any event, the record conclusively establishes that Appellants breached the contract by failing to comply with the termination provision when Appellants refused to refund Appellees' $42,500 deposit, less the "charges" Sportscapers incurred prior to Appellees' lawful exercise of their right to terminate the contract. ......................28

III.    Appellants ask this Court to disregard the well-established standard for reviewing a trial court's entry of a judgment notwithstanding the verdict and ignore that an appellate court must affirm the judgment even if the trial court's rationale is erroneous when the judgment can be supported on a basis presented in the motion...29

IV.     Appellants are simply postponing the inevitable to further delay Appellees' recovery and force Appellees to incur additional attorneys' fees recovering funds that unquestionably belong to them.................38

PRAYER ......................................................................................................39

iv

CERTIFICATE OF COMPLIANCE .................................................................. 40

CERTIFICATE OF SERVICE ......................................................................... 40

RULE 38 APPENDIX ................................................................................... 41

# TABLE OF AUTHORITIES

## Cases

*B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)....................................................................24

*Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568 (Tex. App.—Texarkana 1997, no writ) ........................................................... 31, 35

*Cavazos v. Cintron*, No. 13-04-00529-CV, 2006 WL 1766189 (Tex. App.—Corpus Christi–Edinburg June 29, 2006, no pet.) (mem. op.).............32

*Christiansen v. Prezelski*, 782 S.W.2d 842 (Tex. 1990) .........................26

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)............................25

*Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671 (Tex. 2017)......................................................................................................6

*Curry v. Texas Dep't of Pub. Safety*, 472 S.W.3d 346 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ...................................................................26

*Donahoe v. Jones*, No. 01-15-00191-CV, 2016 WL 796892 (Tex. App.—Houston [1st Dist.] Mar. 1, 2015, no pet.)..........................................26

*Englander Co. v. Kennedy*, 428 S.W.2d 806 (Tex. 1968) ........................26

*Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547 (Tex. 2004) ...................................................................................................25

*Fisher v. Evans*, 853 S.W.2d 839 (Tex. App.—Waco 1993, writ denied) 27

*Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338 (Tex. 2015) ...25

*Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647 (Tex. 1986) (per curiam) ............................................................................................ 30, 35

*Guerra v. Flores*, No. 13-15-00533-CV, 2017 WL 4837849 (Tex. App.—Corpus Christi–Edinburg Oct. 26, 2017, no pet.) (mem. op.) ..............27

*Gulf Land Co. v. Atl. Refining Co.*, 131 S.W.2d 73 (Tex. 1939)..............31

*Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ................................6

*Kwik Wash Laundries, Inc. v. McIntyre*, 840 S.W.2d 739 (Tex. App.—Austin 1992, no writ) ...............................................................26, 27

*Lesher v. Doescher*, No. 02-12-00360-CV, 2013 WL 5593608 (Tex. App.—Fort Worth Oct. 10, 2013, pet. denied) (mem. op.)..............................32

*Mercedes Dusting Serv., Inc. v. Evans*, 353 S.W.2d 894 (Tex. Civ. App.—San Antonio 1962, no writ)..................................................................31

*Nicholson v. Fifth Third Bank*, 226 S.W.3d 581 (Tex. App.—Houston [1st Dist.] 2007, no pet.)...................................................................26

*Rogers v. Rogers*, No. 01-15-00224-CV, 2016 WL 3162299 (Tex. App.—Houston [1st Dist.] June 2, 2016, no pet. h.) (mem. op.) .....................25

*Shell Oil Products Co. v. Main St. Ventures, L.L.C.*, 90 S.W.3d 375 (Tex. App.—Dallas 2002, pet. dism'd by agr.)...............................................36

*Smitherman v. Comm'n for Lawyer Discipline*, 463 S.W.3d 97 (Tex. App.—Houston [1st Dist.] 2015, pet denied) ...........................33, 34, 35

*Speck v. Dry Bones Coffee House*, No. 01-09-00605-CV, 2009 WL 4358039 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.) .... 31, 35, 36

*Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ...................................................32, 35

*Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.3d 276 (Tex. 1994) ...........................................................................................12

*Tiller v. McLure*, 121 S.W.3d 709 (Tex. 2003) ......................................24

*Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773 (Tex. 2008) .........36

*Vandever v. Goettee*, 678 S.W.2d 630 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ................................................................33, 35

*Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300 (Tex. App.—San Antonio 1999, pet. denied)...................................................................31

*Wilson v. State*, No. 09-07-00589-CR, 2008 WL 5501146 (Tex. App.—Beaumont Jan. 14, 2009, no pet.) (mem. op.) (not designated for publication) .........................................................................................35

**Rules**

Tex. R. App. P. 34.6 .....................................................................................27

Tex. R. App. P. 38.1 .......................................................................................4

Tex. R. App. P. 38.2 ....................................................................................2, 4

Tex. R. App. P. 44.1 .....................................................................................32

Tex. R. Civ. P. 301 .......................................................................................24

## STATEMENT OF THE CASE

This is a breach-of-contract suit by residential property owners who seek a refund of their $42,500 deposit paid to the defendants for the installation of a tennis court, less the charges the defendants incurred before the property owners terminated the contract, as allowed by the contract's clear terms. Before, during, and after the trial, the defendants consistently argued that $15,474 of charges were incurred prior to the contract's termination. The jury found that neither party breached the contract without reaching questions on damages. CR 120.

The trial court granted the property owners' motion for judgment notwithstanding the verdict and awarded them $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services." CR 112.

On appeal, the defendants argue the trial court used the wrong legal standard when it disregarded the jury's verdict. However, the defendants ignore the standard by which appellate courts review a

1

judgment notwithstanding the verdict and failed to provide an adequate appellate record showing error requiring reversal.

## STATEMENT ON ORAL ARGUMENT

Appellees respectfully request that the Court grant oral argument in this appeal. Appellants ask this Court to depart from well-established standards regarding Appellants' burden to furnish the Court with an adequate record showing reversible error and disregard the standard by which appellate courts review a trial court's decision to grant a judgment notwithstanding the verdict. Oral argument would aid the Court's decisional process by allowing the Court to explore with counsel the implications of Appellants' request for a dramatic change in the law. Furthermore, oral argument will provide Appellees' counsel invaluable experience, having become licensed in November 2016.

## REPLY TO ISSUES PRESENTED AND CROSS-POINTS

Appellees disagree with Appellants' statement of the issues presented and therefore provide the following. Tex. R. App. P. 38.2(a)(1)(B). Additionally, Appellees bring cross-points pursuant to Tex. R. App. P. 38.2(b)(1).

> **Issue 1**: Did Appellants waive error as to the propriety of the trial court's decision to grant Appellees' motion for judgment

notwithstanding the verdict by failing to produce an adequate appellate record for this Court's consideration?

**Issue 2**: Does the record demonstrate that Appellants breached the parties' contract by failing to comply with the termination provision when Appellants refused to refund Appellees' $42,500 deposit, less the charges Sportscapers incurred prior to Appellees' lawful exercise of their right to terminate the contract?

**Issues 3**: Do Appellants ask this Court to disregard the well-established standard of review of a trial court's entry of a judgment notwithstanding the verdict and ignore that an appellate court may affirm the judgment even if the trial court's rationale for granting the motion is erroneous when the trial court's decision can be supported on another basis presented to the trial court?

**Issue 4**: Even if the trial court's final judgment recites an incorrect legal standard, is the purported error rendered harmless when the motion and judgment are considered in full?

**Issue 5 [Cross-Point]**: Does the record—including Appellants' own admissions that Appellees are entitled to a refund of at least $27,000—conclusively establish that Appellants breached the contract by refusing to refund the undisputed portion of Appellees' deposit, such that the jury's finding that Sportscapers did not breach the contract is unsupported by any evidence and against the overwhelming preponderance of the evidence?

**Issue 6 [Cross-Point]**: Should the jury's verdict be set aside because of improper argument of Appellants' counsel?

STATEMENT OF FACTS

Appellees object to Appellants' Statement of the Facts because it contains multiple misrepresentations, is incomplete, and is not supported by references to the appellate record with respect to the facts most

3

relevant to this appeal. Tex. R. App. P. 38.1(g), 38.2(a)(1)(B). Appellants' Brief also fails to mention the gamesmanship and improper jury argument by their trial counsel, which ultimately resulted in a jury verdict supported by absolutely no evidence.

## I. Appellees sign a contract containing a no-cause termination provision, under which Appellants agreed to construct a tennis court on Appellees' property to their specifications and in a good and workmanlike manner for $85,000, with half the balance due up front.

On August 1, 2015, Appellees and Appellants entered into a "Construction Contract" that called for Appellants to build "in a neat, first class, good and workmanlike manner, and in strict compliance with the Contract Documents" a tennis court on Appellees' property. CR 16; 3 Supp. RR 5 (Pls. Ex. 1). All the negotiations with Appellees were conducted by and through Roderick Thompson, the owner and operator of Sportscapers Construction, Inc. CR 8; *see also* Appendix A (certified records from the Texas Secretary of State reflecting that Thompson is the owner and registered agent of Sportscapers Construction, Inc.).

The parties agreed that Appellees would pay $85,000 for the installation of the tennis court, to be paid as follows: $42,500 before work began, $34,000 upon completion of the concrete pour, and $8,500 within

five days of substantial completion of the project. CR 16; 3 Supp. RR 5 (Pls. Ex. 1). Further, the parties agreed that all components and materials would remain Appellants' property until final payment was made. CR 9, 3 Supp. RR 6 (Pls. Ex. 1). The parties also agreed that Appellants would "reasonably clean up the work site and access area" upon completion of the work at Appellees' property. CR 17; 3 Supp. RR 7 (Pls. Ex. 1). And most importantly, the parties' contract included the following termination provisions:

> **21. Termination by Sportscapers**. Sportscapers has the right to terminate this Agreement at any time and to be paid the reasonable value of Work thus far performed.
>
> **22. Termination by Owner**. In the event the Owner terminates the Agreement, the Owner shall be legally responsible to pay Sportscapers **for the charges up to and including the date of such termination**, regardless of whether the Owner has received an Invoice for such Charges prior to such termination.[1]

CR 18 (emphasis added); 3 Supp. RR 8 (Pls. Ex. 1). The contract does not define the term "charges." However, the potential ambiguity is immaterial to this appeal because Appellants claim only $15,474 in "charges," and Appellees do not challenge this amount on appeal.

---

[1] The contract also provided Appellees the right to cancel the contract at any time within three business days by delivering written notice to Sportscapers. 3 Supp. RR 6 (Pls. Ex. 1).

Paragraphs 21 and 22 of the contract are undoubtedly no-cause termination provisions, also referred to as termination for convenience clauses. As the Supreme Court of Texas recently explained: a no-cause termination can be premised on any reason, or no reason at all, and can be accomplished simply by providing notice and, if applicable, the contractual "penalty" or liquidated-damages payment. *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 683 (Tex. 2017). Here, Appellees could terminate the agreement for any or no reason, but the "penalty" (or liquidated damages) was that Appellees would have "to pay Sportscapers for the charges up to and including the date of such termination." *See, e.g.*, *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 68 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (analyzing a termination for convenience clause and explaining that such a clause "limits the contractor's damages to those specified").

On August 1, 2015, consistent with their contractual obligations, each Appellee tendered to Thompson two checks in the amount of $21,250 (totaling $42,500) made out to Sportscapers, which were deposited on August 3. CR 9.

**II. After Appellants commence work, Appellees quickly lose confidence in Appellants' ability to perform in a good and workmanlike manner and ask that all work stop while they get the project back on track. When all the issues appear to be resolved, Appellants demand that Appellees modify the agreement by signing waivers of certain contractual terms. When Appellees refuse, Appellants turn the matter over to their attorney.**

On or about August 10, 2017, Sportscapers' crews came out to Appellees' home to begin the construction. CR 9; 3 Supp. RR 10 (Pls. Ex. 3). At the end of that day, Appellees noted that Sportscapers' had:

(1) failed to perform site preparation activities that were standard in the industry, which they had actually discussed with Thompson and the community developer, despite the fact that the developer had expressed concerns about local soil conditions in a preliminary meeting in July 2015;

(2) failed to identify utilities, and had actually severed a Comcast cable line in the preliminary phases of the project;

(3) positioned the layout of the tennis court incorrectly and not in accordance with the parties' agreement;

(4) failed to secure homeowners' association approval for the construction of the tennis court;

(5) damaged Appellees' driveway on the first day of construction; and

(6) failed to maintain a clean and safe worksite.

CR 9–10; 3 Supp. RR 11, 13–17 (Pls. Exs. 5–8). In light of these deficiencies, Appellants quickly lost confidence in Sportscapers' ability to

7

properly construct the tennis court on their property and ordered that construction stop immediately. CR 10; 3 Supp. RR 15–17 (Pls. Ex. 8).

Over the course of the next three weeks, activities that undoubtedly should have been undertaken prior to the commencement of construction proceeded in what is best described as a haphazard manner. For example, the day after construction was stopped, Appellees asked Thompson to provide copies of his plans and specifications so that they could present those plans to the homeowners' association for approval. CR 10; 3 Supp. RR 17 (Pls. Ex. 8). Only then did Appellees learn that Sportscapers and Thompson had not prepared any plans before beginning the work. CR 10; 3 Supp. RR 16 (Pls. Ex. 8) (August 11 e-mail from Thompson admitting "In terms of a set of plans, I will have to get some plans created for what we are doing on your property. Will have plans drafted by a draftsman. Should take about 4 days to complete."). When Thomson subsequently prepared plans for the site, his plans contained multiple inaccuracies and inadequacies and had to be amended. CR 10; 3 Supp. RR 27, 35, 46 (Pls. Ex. 9); *see also* 3 Supp. RR 106 (Pls. Ex. 10).

Thereafter, when it appeared that fair and somewhat-accurate plans had finally been achieved, Sportscapers and Thompson sent

Appellees a binder full of new and never-before-discussed demands for waiver of many necessary preparatory activities. CR 10–11; 3 Supp. RR 104–05 (Pls. Ex. 10). Appellees refused to modify the agreement by signing the waivers, and Thompson turned the entire matter over to his lawyer. CR 11; 3 Supp. RR 100 (Pls. Ex. 10).

## III. Appellees request a refund of their deposit after terminating the contract, and Appellants and their attorney go silent, forcing Appellees to file suit.

Beginning September 4, 2015, Appellees made numerous attempts to obtain the refund of all or part of their $42,500 deposit—representing 50% of the entire contract amount. CR 11; 3 Supp. RR 100–101 (Pls. Ex. 10). The only response they received from Thompson was a copy of an e-mail to his attorney, in which Thompson acknowledged that "under our agreement, you do have a termination option" and indicated that his attorney would explain "the direct expenses associated with the work" completed to date and "close out this matter." 3 Supp. RR 100 (Pls. Ex. 10); CR 11. In a subsequent e-mail, Thompson stated that he was "[g]ladly willing to refund the monies" due to Appellees, "minus [his] expenses." 3 Supp. RR 98 (Pls. Ex. 10).

9

Appellees received a single refund offer from Appellants' counsel. CR 11. In the refund offer, Appellants' counsel indicated that Sportscapers was entitled to keep $15,474 for the following services the company had rendered prior to Appellees' termination of the contract:

TABLE 1: ITEMIZATION OF SPORTSCAPERS' CHARGES

| Amount | "Charge" |
|---|---|
| $2,738 | "supplies purchased for mobilization" |
| $2,576 | "supplies purchased for tennis court needed before concrete pour" |
| $3,560 | "placement of loads of fill dirt including all labor, equipment, and fuel" |
| $2,100 | "rendering requested by client and submittals for HOA" |
| $4,500 | "Admin., supervision, and general costs" |
| **$15,474** | |

CR 91–92. In response, Appellees hired counsel to prepare a counteroffer.

Until Appellees finally filed suit in November 2017, there were:

(1) no calls or return calls from Thompson;

(2) no calls or return calls from Appellants' counsel;

(3) no responses to e-mails sent to Thompson;

(4) no responses to e-mails sent to Appellants' counsel; and

(5) no responses to mail sent to Appellants' counsel.

CR 11; *see also* 3 Supp. RR 97–100 (Pls. Ex. 10). Appellees alleged that Sportscapers and Thompson breached the contract: (1) by failing to

10

complete their tennis court in a good and workmanlike manner, according to the contract specifications; (2) by failing and refusing to reclaim construction materials left at the site, despite Appellees' pleas to do so; (3) by failing and refusing to "reasonably clean up the work site and access area" upon termination of their work; and **(4) by failing and refusing to refund sums due to Appellees after Sportscapers' services had been terminated.** CR 12. Appellees also brought a conversion claim, which was dismissed when the trial court granted a directed verdict for Appellants during trial. CR 12. Appellees requested a "[r]efund of their intial $42,500 deposit, less reasonable, necessary, and customary charges for services rendered" prior to and including the date they terminated the contract. CR 13.

IV.  **The lawsuit proceeds to a four-day jury trial, in which Appellants' counsel engages in a remarkable display of gamesmanship, deceit, and improper jury argument, and the jury finds that neither party breached the contract without reaching the damages questions that had been conditioned on a finding of breach.**

The lawsuit was tried before a jury from Tuesday, January 17, 2017, to Friday, January 20, 2017—a long trial for a simple breach of contract dispute. CR 53, 77, 81. During trial, Appellants' attorney engaged in a spectacular display of gamesmanship. Presumably to

11

exhaust the jury with a four-day trial, Appellants' counsel requested last-minute, partial-day continuances so that he could, for example, challenge a speeding ticket he had received in League City, Texas.

During trial, Appellants presented documentary evidence of only one "charge" incurred by Sportscapers in furtherance of Appellees' tennis court: $225. CR 94; *see also* 2 Supp. RR 7:16–8:25. However, Thompson was also allowed to testify that Sportscapers incurred the charges identified in Table 1, *supra*, totaling $15,474.[2] CR 91–92.

But even if Sportscapers were entitled to keep $15,474, the question remains: **How could Sportscapers keep Appellees' $42,500 deposit if its contention was that it was only entitled to $15,474? Under the contract's unambiguous terms, Appellees have always been entitled to the uncontested balance: $27,026.**

_____

[2] Sportscapers also presented Roderick's testimony that it was entitled to $21,250 as "lost profits," despite the fact that the contract's termination provision does not provide that Sportscapers was entitled to its claimed 25% of the contract price as "lost profits" upon Appellees' termination. CR 93–95. Rather, the contract unambiguously allowed Sportscapers to recover nothing more than "the charges" accrued up to the date of termination. Indeed, the contract does not mention "lost profits" whatsoever. CR 16–19. Regardless, Appellants failed to prove Sportscapers' "lost profits" with reasonably certainty, and Appellants do not request them on appeal. *See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.3d 276, 279 (Tex. 1994) (holding that lost profits must be established with reasonable certainty).

On the last day of trial—and just before closing arguments—Sportscapers strategically deposited $25,000 into the court registry. CR 80. Indeed, if there was any valid reason for the Sportscapers' last-second deposit of funds into the registry, it must surely have been because Appellants knew that Appellees were entitled to a refund of the undisputed portion of the $42,500 they paid Sportscapers at the commencement of the parties' relationship.

Appellants, however, had another plan: **to improperly inform the jury of the $25,000 deposit and convince the jury that the funds would be paid to Appellees regardless of the outcome of the case**. Appellants' counsel stated during closing argument:

> MR. TINDAL: And you've heard testimony earlier where Mr. -- Mr. Thompson, through Sportscapers, had offered the plaintiffs a refund by this itemization when they terminated him.
>
> Now, keep in mind **this adds up to effectively $15,000 or so that he's saying that Sportscapers has earned**. By this measure of damages, Question 6, and the same as the time here, too; but the -- the alternate measure of damages places it at about $25,000. Now, rather than the 25, he was ready to go to 15- and say: Let's be done with it....
>
> I don't, by any means, mean to concede that I view this case as a win for the plaintiffs. Quite the opposite, and I'll – I'll tell you also that I objected; and then, since he opened the door, **I'll go ahead and -- and complete the sentence here that**

13

**Mr. Thompson is not, in fact, holding the $42,500. And the disputed part of that money is in the registry of the Court,** and our --

MR. BROPHY: Objection --

MR. TINDAL: -- Judge --

MR. BROPHY: -- Your Honor.

MR. TINDAL: -- has --

THE COURT: Sustained.

MR. BROPHY: Well, now that it's out there, can we let them know that he put it in there at noon today?

THE COURT: Counsel, please approach the bench.

2 Supp. RR 20:2–13, 21:5–22 (emphasis added).[3] Thus, Appellants' own counsel conceded that: **(1) Appellants presented <u>no evidence</u> of any charges exceeding $15,474**; **(2) Sportscapers only claimed $15,474 as "charges" the company had incurred;** and **(3) $25,000 of the $42,500 deposit was placed in the court registry for Appellees' benefit**. *Id.* Under no circumstances were Appellants entitled to keep the undisputed portion of the deposit. Any jury finding to the contrary was not supported by the evidence.

---

[3] That Sportscapers had deposited money in the registry of the court was not a fact presented at trial. 2 Supp. RR 22.

Even more, despite this improper jury argument by Appellants' counsel, Appellants have never—before, during, or after trial: (1) documented costs exceeding $225 for the work Sportscapers performed in preparation of the job; or (2) refunded a dime of Appellees' deposit, even though no set of facts presented at trial would negate Appellees' entitlement to a refund of the undisputed portion thereof.

At the conclusion of the trial, the jury, apparently exhausted by the four-day trial and by the games of Appellants' counsel, returned a unanimous verdict that neither Appellees nor Appellants had breached the contract. CR 72. Because the damages questions were conditioned on a finding of breach,[4] the jury did not answer any of the damages questions submitted. CR 70–76. Notably, no questions were submitted regarding the "charges" Sportscapers had incurred prior to Appellees' termination of the contract under the termination provision. CR 70–76.

---

[4] While Appellees' proposed jury charges did not condition questions regarding the amounts owed or earned by the parties, Appellants' proposed charges specifically conditioned the damages questions on a finding of breach—presumably, so that the jury would not find that Appellees were entitled to a refund absent a finding that Sportscapers and Thompson had breached the contract. *Compare* CR 39–52 (Plaintiffs' first and amended proposed jury charges), *with* CR 54–66 (Defendants' proposed jury charge). Over Appellees' objection, the trial court submitted pure breach-of-contract damages questions conditioned on a finding of breach. CR 73.

Appellants state, with no support in the record, that after the jury rendered its verdict, "Plaintiffs made a motion for judgment notwithstanding the verdict that was denied." Appellants' Br. at 8. Appellants' counsel made the same misrepresentation in a motion filed seven days after the jury rendered its verdict. CR 78. This assertion is an outright lie,[5] and it demonstrates the gall with which Appellants' counsel will misrepresent facts to obtain a favorable result for his clients.

## V. Appellants move for a take-nothing judgment, which the trial court later denies.

Despite Appellants' position at trial, on January 27, 2017, Appellants filed a motion for entry of judgment, asking the Court to enter a take-nothing judgment and order the release of the $25,000 mysteriously deposited into the court registry back to Sportscapers. CR 77–78. The trial court denied Appellants' motion. CR 89–90, 120.

---

[5] Indeed, the trial court's docket notes state that the court took Appellees' oral motion for judgment notwithstanding the verdict "under advisement." CR 120.

16

**VI. Appellees file a combined motion for judgment, motion for judgment notwithstanding the verdict, and motion for new trial, asking that the court apply the plain language of the contract and award Appellees their $42,500 deposit, less the "charges" Sportscapers incurred prior to their termination of the contract.**

On March 3, 2017, Appellees filed their combined *Motion for Judgment, Motion for Judgment Notwithstanding the Jury's Verdict, and Motion for New Trial.* CR 91–98. In the motion, Appellees first asked that the trial court enter judgment in their favor "consistent with the law and the jury's verdict" and award them $27,026 (representing $42,500 less the amount of "charges" arguably shown to have been incurred by Sportscapers), plus pre-judgment interest. CR 92, 95. Alternatively, Appellees sought a judgment awarding them $42,275 (representing $42,500 less the $225 documented charge evidenced at trial). CR 95. Appellees requested that the $25,000 deposited in the court's registry be released to them. CR 95.

Appellees also moved in the alternative for a judgment notwithstanding the jury's "no breach" verdict. CR 95. Particularly, Appellees argued that, despite the jury's findings, the evidence conclusively established Appellees' entitlement to a refund of the undisputed portion of their $42,500 deposit and that Sportscapers had

17

breached the contract by failing to do so. CR 95–96. That is, Appellees again simply asked that the trial court apply the termination provision according to its plain terms—awarding Appellees the balance of their deposit, less the evidence of "charges" Sportscapers even arguably presented at trial. CR 95–96.

Finally, Appellees moved in the alternative for new trial. CR 96–97. Appellees argued that a take-nothing judgment based on the jury's finding that neither party breached the contract would be manifestly unjust, since under no circumstance were Appellants entitled to keep the entire balance of Appellees' $42,500 deposit. CR 97. Put differently, Appellees argued that the jury's refusal to answer the damages questions was so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. CR 97. As grounds, Appellees argued:

> [I]n addition to the obvious and irreparable problem with a proposed damage award of "zero," Plaintiffs MITCHELL and BROWN would show the Court that counsel for the Defendants purposefully tainted closing jury argument to such a degree that a new trial is warranted.
>
> The Court will recall that at lunchtime on the final day of trial, counsel for the Defendants inexplicably, suddenly, and unexpectedly deposited $25,000.00 into the Registry of the Court under the name of Sportscapers Construction, Inc.

18

Then, during closing arguments, counsel for the Defendants disclosed the deposit of those funds to the jury seated to hear this case, undoubtedly with the express intent of leading the jurors to believe that:

1) the Defendants were acting in good faith throughout this dispute; and/or

2) the Plaintiffs would receive something for their Courtroom efforts even if the jury found that no one breached the parties' contract. That bad-faith argument alone "might reasonably have affected the outcome" of this trial, and constitutes "good cause" for a new trial devoid of such egregious behavior.

CR 97–98.

**VII. The trial court grants Appellees' motion for judgment notwithstanding the verdict and, four days later, enters a final judgment awarding Appellees $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services."**

On May 12, 2017, the trial court granted Appellees' motion for judgment notwithstanding the verdict. CR 121. On May 16, 2017, the trial court entered a final judgment[6] awarding Appellees $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by

---

[6] Appellants' Brief cites to the wrong judgment. Appellants' Br. at 6, 8–9, 14. Specifically, Appellants cite to the proposed judgment they filed with their January 27 motion for judgment, which the trial court later denied. CR 89–90, 120.

Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services." CR 112. Although the final judgment also stated that "the jury's answers to the Questions were against the great and overwhelming preponderance of the evidence," this legal conclusion is not essential to the trial court's judgment applying the termination provision according to its terms. Even more, the final judgment, signed four days after the trial court granted Appellees' request for a judgment notwithstanding the verdict, does not mention Appellees' *Motion for Judgment, Motion for Judgment Notwithstanding the Jury's Verdict, and Motion for New Trial*. CR 111–12, 121.

Appellants filed a notice of appeal without asking that the trial court modify or correct its judgment. CR 115.

## SUMMARY OF THE ARGUMENT

The parties' contract provided that Appellees could terminate the contract for any or no reason at all at any point in time. However, if Appellees exercised this right, Appellants were entitled to the charges incurred up to and including the date of such termination. Appellees terminated the contract after depositing $42,500 (or 50% of the entire contract price) to Appellants and before Appellants performed any

significant work on the project. At trial, Appellants presented documentary evidence of $225 of "charges" incurred prior to the contract's termination and presented testimony that Appellants had incurred $15,474 in "charges" before Appellees terminated the contract.

Pursuant to the contract's unambiguous terms, Appellees were entitled to a refund of their $42,500 deposit, less the charges Appellants incurred prior to the contract's termination. Appellants established, at best, that they incurred $15,474 in charges before Appellees terminated the contract, meaning that Appellees were entitled to a refund in the amount of $27,026. There was no contrary evidence presented at trial, and there is no contrary evidence in the appellate record.

The court's charge conditioned all damages questions based on a finding of breach. Because the jury—likely influence by Appellants' improper closing argument insinuating that Appellees would receive the $25,000 mysteriously deposited into the registry on the last day of trial—found that neither party had breached the contract, the jury did not make any damages findings. In short, Appellants escaped a breach-of-contract jury verdict by improperly suggesting during closing argument that

21

Sportscapers had deposited the refundable portion of Appellees' deposit in the court's registry.

The evidence at trial and in this appellate record conclusively establishes that Appellants breached the contract's termination provision when they refused to refund Appellees' deposit, less the charges incurred prior to the contract's termination. Under these circumstances, it was entirely proper for the trial court to disregard the jury's finding on the question of Appellants' failure to comply with the contract. Further, the evidence conclusively establishes that Appellants' incurred no more than $15,474 in charges up to and including the date of the contract's termination. The evidence therefore conclusively establishes that Appellees were entitled to a refund of at least $27,026. The trial court did not err by granting Appellees' motion for judgment notwithstanding the verdict and by entering a judgment awarding Appellees $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services."

**Appellants do not contend that the evidence does not conclusively establish that Sportscapers breached the contract by refusing to refund at least $25,000 of Appellees' deposit**. Indeed, Appellants waived that issue by failing to raise it in their opening brief and by failing to furnish an adequate record for this Court's review. Instead, Appellants point to language in the Court's final judgment and hope for a second bite at the apple. But Appellants ignore that that appellate courts review a trial court's grant of a judgment notwithstanding the verdict under a legal-sufficiency standard and will affirm the trial court's judgment where the evidence conclusively establishes the opposite of the jury's factual finding. In short, this Court must consider whether the trial court's decision to disregard jury's finding was proper, and the record in this case shows precisely that. Any defective language in the Court's judgment is harmless, despite Appellants' protestations.

The Court should affirm the trial court's judgment applying the plain language of the contract's termination provision because the evidence presented at trial and in this appellate record conclusively establishes that Appellants breached the contract when they refused to

refund Appellees' deposit, less the $15,474 in charges they claim to have incurred prior to the contract's termination.

**ARGUMENT**

I. **Appellants waived error as to the propriety of the trial court's decision to grant Appellees' motion for judgment notwithstanding the verdict by failing to produce an adequate appellate record for this Court's consideration.**

Appellants waived error as to the propriety of the trial court's decision to grant Appellees' motion for judgment notwithstanding the verdict ("JNOV") by failing to furnish a sufficient record to show error requiring reversal.

A trial court may disregard a jury's verdict and render a JNOV if no evidence supports the jury's findings or if a directed verdict would have been proper. Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Courts review a trial court's decision to grant a JNOV under a legal-sufficiency standard, upholding a trial court's decision when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the trial court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a

scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015); *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). "A JNOV should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law ...." *Beckman*, 305 S.W.3d at 15. A court must consider the evidence in the light most favorable to the nonmoving party, but if the evidence allows only one inference, the court may not disregard it. *Wilson*, 168 S.W.3d at 822.

Error is never presumed on appeal. *Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004). To the contrary, **appealed judgments and orders are presumed correct, and <u>the appellant</u> has the burden of overcoming this presumption by affirmatively showing error on an adequate record**. *Id.* (explaining that if the pertinent evidence considered by the trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment); *see also Rogers v. Rogers*, No. 01-15-00224-CV, 2016 WL 3162299, at *3 (Tex. App.—Houston [1st Dist.] June 2, 2016, no pet. h.) (mem. op.) ("The requirement of a reporter's record applies to issues which require reference to the

evidence."). **When the appellant brings forward an incomplete record, a presumption arises that the missing portion of the evidence is sufficient to support the trial court's judgment.** *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *see also Englander Co. v. Kennedy*, 428 S.W.2d 806, 806–07 (Tex. 1968) (same); *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same). Furthermore, **when an appellant fails to bring forward a complete record, the appellate court will conclude that the appellant has waived the points of error dependent on the state of the evidence**. *Donahoe v. Jones*, No. 01-15-00191-CV, 2016 WL 796892, at \*3 (Tex. App.—Houston [1st Dist.] Mar. 1, 2015, no pet.); *Curry v. Texas Dep't of Pub. Safety*, 472 S.W.3d 346, 350 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Texas courts hold that an appellant cannot rely on an incomplete record to attack a JNOV where a directed verdict would have been proper. *See, e.g.*, *Kwik Wash Laundries, Inc. v. McIntyre*, 840 S.W.2d 739, 743 (Tex. App.—Austin 1992, no writ) (surveying cases and concluding that an appellate court cannot properly apply the standard for reviewing a JNOV without reviewing the entire record); *see also Fisher v. Evans*,

853 S.W.2d 839 (Tex. App.—Waco 1993, writ denied) (same). In fact, the *Kwik Wash* Court recognized that if an appellant were allowed to pick and choose the portions of the record it deemed relevant, then the appellant could intentionally omit portions of the record in which the appellant admitted the opponent's case. *Id.* **This is precisely the type of gamesmanship that Thompson and Sportscapers are trying to pull in this appeal.**

In short, the evidence presented to the jury is key to Appellants' challenge to the trial court's order granting Appellees' motion for JNOV, but the reporter's record Appellants filed with the Court is a mere eight pages—the jury's verdict—and contains no information as to the testimony and evidence the jury observed at trial. Appellants did not file a request for a partial reporter's record or otherwise file a statement of the points or issues to be presented on appeal with the trial court. CR 115; *see also* Tex. R. App. P. 34.6(c); *Guerra v. Flores*, No. 13-15-00533-CV, 2017 WL 4837849, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 26, 2017, no pet.) (mem. op.) (holding that the court "must presume that the missing portion of the reporter's record supports the trial court's decision" where "appellant neither filed and served a request for a partial

reporter's record on appellee nor stated the points of error he would be relying upon"). The appellate record is undoubtedly insufficient. As a result, the Court must presume that the evidence supports the trial court's judgment and hold that Appellants waived error.

**II.    In any event, the record conclusively establishes that Appellants breached the contract by failing to comply with the termination provision when Appellants refused to refund Appellees' $42,500 deposit, less the "charges" Sportscapers incurred prior to Appellees' lawful exercise of their right to terminate the contract.**

The evidence in this record and presented to the jury at trial conclusively establishes that:

(1)    Appellees deposited $42,500 (50% of the contract price) before Appellants commenced work under the contract, *see* Appellants' Br. at 7–8 (Appellants' Statement of the Facts);

(2)    Appellees lawfully terminated the contract under the termination provision, CR 72 (jury's find that Appellees did not fail to comply with the agreement); CR 112 (final judgment);

(3)    Appellees were contractually entitled, according to the contract's unambiguous terms, to a refund of their deposit, less the charges Appellants had incurred up to and including the date Appellees terminated the contract, CR 18 (contract);

(4)    Appellants had incurred, at most, $15,474 in charges up to and including the date Appellees terminated the contract, 2 Supp. RR 20:2–13, 21:8–12; 3 Supp. RR 97–100; and

(5)     Appellants refused to refund Appellees' deposit, less the charges incurred up to and including the date Appellees terminated the contract, 3 Supp. RR 97–100.

Accordingly, the record and all the evidence at trial conclusively establishes that Appellants breached the contract by failing to comply with the contract's termination provision when they refused to refund Appellees' $42,500 deposit, less the $15,474 in charges that Sportscapers incurred prior to and including the date of Appellees' lawful exercise of their right to terminate the contract. No contrary evidence exists, and the trial court correctly granted Appellees' motion for JNOV. The trial court also correctly entered judgment in Appellees' favor for $25,000, "representing the sums actually paid to Defendant Sportscapers Construction, Inc., by the Plaintiffs herein, less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services." CR 112.

## III. Appellants ask this Court to disregard the well-established standard for reviewing a trial court's entry of a judgment notwithstanding the verdict and ignore that an appellate court must affirm the judgment even if the trial court's rationale is erroneous when the judgment can be supported on a basis presented in the motion.

Appellants ask this Court to ignore the evidence presented at trial and to not determine whether the evidence conclusively establishes that

29

Appellants breached the contract's termination provision and that Appellants incurred no more than $15,474 in charges prior to the contract's termination. Instead, Appellants ask that the Court focus solely on one clause in the trial court's final judgment awarding Appellees $25,000, "representing the sums actually paid to [Sportscapers], less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services." CR 121. Even more, Appellants focus on the language in the trial court's final judgment but fail to mention that the trial court had granted Appellees' motion for JNOV four days earlier. CR 121. Appellants also fail to mention that their counsel's improper jury argument created this problem to begin with. 2 Supp. RR 21:8–12. However, the fact that a court gives an incorrect legal reason for its otherwise correct judgment is not dispositive, as an appellate court must review the JNOV by reviewing the arguments presented in the motion and a complete appellate record.

Texas law is well-settled that an appellate court "must uphold a correct lower court judgment on any legal theory before it, **even if the court gives an incorrect reason for its judgment**." *Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam) (emphasis

added) (citing *Gulf Land Co. v. Atl. Refining Co.*, 131 S.W.2d 73, 77 (Tex. 1939)). This principle applies to a trial court's order granting a motion for JNOV. *Speck v. Dry Bones Coffee House*, No. 01-09-00605-CV, 2009 WL 4358039, at *2 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.). Indeed, "**[a]ffirmance of the trial court's judgment is proper <u>if it is supported by any ground asserted in the motion for judgment notwithstanding the verdict, even if the trial court's assigned rationale for granting the motion is erroneous</u>**." *Id.* (emphasis added) (quoting *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302 (Tex. App.—San Antonio 1999, pet. denied). In short, courts "will not reverse a correct decision, even if the trial court gave an incorrect reason for the decision." *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 585 (Tex. App.—Texarkana 1997, no writ). Put differently, "[i]f the trial court renders an otherwise correct judgment, it will not be set aside because it made one or more incorrect conclusions of law…. The appellate court will simply correct the incorrect conclusion of law, and if the judgment is found to be correct it will be upheld, although based upon an incorrect conclusion of law." *Mercedes Dusting Serv., Inc. v. Evans*, 353 S.W.2d 894, 896 (Tex. Civ. App.—San Antonio 1962, no writ); *see also*

Tex. R. App. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

A corollary to this principle is that "[t]o win an appeal from a judgment notwithstanding a jury's verdict, an appellant must successfully challenge all independent grounds that the appellee sought judgment on and that may have supported the judgment." *Lesher v. Doescher*, No. 02-12-00360-CV, 2013 WL 5593608, at *2 (Tex. App.—Fort Worth Oct. 10, 2013, pet. denied) (mem. op.). This is true even if the trial court's order includes language describing the wrong legal standard. *See, e.g., Cavazos v. Cintron*, No. 13-04-00529-CV, 2006 WL 1766189, at *2 n.2 (Tex. App.—Corpus Christi–Edinburg June 29, 2006, no pet.) (mem. op.); *see also Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 777 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Affirmance of the trial court's judgment is proper if it is supported by any ground asserted in the motion … even if the trial court's assigned rationale for granting the motion is erroneous.*"); Vandever v. Goettee*, 678 S.W.2d 630, 635 (Tex.

App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("If the judgment is otherwise correct upon the merits, it is not to be reversed because the trial judge grounded it upon incorrect legal reasons.").

This Court's decision in *Smitherman v Commission for Lawyer Discipline* is instructive. There, the Commission for Lawyer Discipline sued an attorney, alleging that he committed certain violations of the Texas Disciplinary Rules of Professional Conduct. *Smitherman v. Comm'n for Lawyer Discipline*, 463 S.W.3d 97, 98 (Tex. App.—Houston [1st Dist.] 2015, pet denied). After a jury found in the attorney's favor, the trial court granted the Commission's motion for JNOV and entered a judgment for the Commission. *Id.*

The attorney appealed the trial court's decision to grant the motion for JNOV arguing, among other things, that the trial court applied the wrong legal standard in granting the motion JNOV based on statements the trial court allegedly recited when considering the motion. *Id.* at 106. **Despite the attorney's challenge to the legal standard used by the trial court, this Court proceeded in a traditional legal-sufficiency review, considering whether a JNOV was proper based on the record and the grounds raised in the Commission's motion**. *Id.* at

103–04. This Court explained that it reviews "trial court's application of the law to the facts de novo," and concluded that the JNOV was proper based on the correct legal standard. *Id.* at 107. Even if the attorney had shown that the trial court applied the incorrect legal standard, this Court would affirm the trial court's judgment if the JNOV was supported by any ground asserted in the motion.

Here, Appellees argued in their motion for JNOV that, despite the jury's no-breach finding, the evidence conclusively established that Appellees were entitled to a refund of the undisputed portion of their deposit, meaning that Sportscapers necessarily breached the contract by failing to do so. CR 95–96; 2 Supp. RR 20:2–13, 21:8–12. Appellees asked the trial court to disregard the jury's finding that Appellants had not breached the contract and award them $42,275 or $27,026 in breach-of-contract damages. CR 95–96. The evidence conclusively established that Appellants refused to provide a refund under the termination provision, even after acknowledging a refund was due, and that Appellees were entitled to an award of at least $27,026. 2 Supp. RR 20:2–13, 21:8–12; 3 Supp. RR 97–100. The trial court's decision to grant Appellees' motion for JNOV was proper on the record before this Court and on the record before

the trial court. Even if the trial court had applied the incorrect legal standard—a point which Appellees do not concede, Appellants have done nothing to demonstrate that a judgment notwithstanding the verdict was improper under the correct standard. *See Reyna*, 709 S.W.2d at 648; *Smitherman*, 463 S.W.3d at 98; *Lesher*, 2013 WL 5593608, at *2; *Speck*, 2009 WL 4358039, at *2; *Cavazos*, 2006 WL 1766189, at *2 n.2; *Taco Cabana*, 5 S.W.3d at 777; *Williams*, 947 S.W.2d at 585; *Vandever*, 678 S.W.2d at 635; *see also Wilson v. State*, No. 09-07-00589-CR, 2008 WL 5501146, at *11 (Tex. App.—Beaumont Jan. 14, 2009, no pet.) (mem. op.) (not designated for publication) (holding that trial court did not err in denying motion for new trial even though the court's order stated the wrong legal standard because "[a]pplying the correct legal standards … the trial court did not err ….").

The Supreme Court of Texas has already considered and rejected the argument Appellants make on appeal. In *Ulico Cas. Co. v. Allied Pilots Association*, a case regarding an alleged breach of an insurance contract, the jury found against Ulico in four liability questions, but the trial court granted Ulico's motion for JNOV and set aside two of the jury findings. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 776 (Tex.

2008). Before the Texas Supreme Court, Allied Pilots Association ("APA") claimed that the trial court applied the wrong standard of review in disregarding one of the jury's answers based on the trial court's conclusion of law that "the evidence does not support" APA's claim that an extended reporting period was granted. *Id.* at 789. Put differently, APA claimed that the trial court based its decision on insufficient rather than no evidence. *Id.* The Court, however, found that the trial court's conclusions of law were not dispositive:

> But even if the trial court applied the wrong standard in reaching its decision to disregard the jury's answer, **Ulico is entitled to a no-evidence review because it asserted in its Motion for Judgment Notwithstanding the Verdict and its cross-issues that no evidence supported the jury finding**. The trial court properly granted judgment notwithstanding the verdict on that ground.

*Id.* (emphasis added). Just as in this case, language in the trial court's judgment is not determinative, as an appellate court must affirm a trial court's judgment "if it is supported by any ground asserted in the motion for judgment notwithstanding the verdict, even if the trial court's assigned rationale for granting the motion is erroneous." *Speck*, 2009 WL 4358039, at *2; *see also Shell Oil Products Co. v. Main St. Ventures, L.L.C.*, 90 S.W.3d 375, 387 (Tex. App.—Dallas 2002, pet. dism'd by agr.)

("We may uphold a JNOV only if no evidence supports the jury finding. Consequently, the standard of review used by the trial court is irrelevant to our inquiry." (citation omitted)).

Appellants cite no authority supporting their request that the Court depart from the well-settled standard of review of a trial court's decision to grant a motion for JNOV. In fact, Appellants recognize that this Court must consider the propriety of the trial court's decision by "review[ing] the evidence" to determine whether no evidence supported the jury's finding. Appellants' Br. at 11. The Court should reject Appellants' invitation to depart from established standards of appellate review and affirm the trial court's judgment because a judgment notwithstanding the verdict was proper based on the grounds asserted in Appellees' motion and because Appellants have failed to overcome the presumption that the trial court's judgment is correct by affirmatively showing error on an adequate record. Instead, the appellate record—and Appellants' own statements—conclusively establish that Appellees were entitled to a refund of the undisputed portion of their deposit—$25,000 (or $27,026).

## IV. Appellants are simply postponing the inevitable to further delay Appellees' recovery and force Appellees to incur additional attorneys' fees recovering funds that unquestionably belong to them.

This appeal is no more than another example of Appellants' gamesmanship and attempt to delay the inevitable. Indeed, there is no doubt that if this Court were to remand to the trial court so that it may reconsider Appellees' motion for JNOV, the trial court would simply enter the same final judgment using tighter language.[7] Thereafter, Appellants would predictably bring another frivolous appeal. In fact, not only are Appellants' games predictable; Appellants admit their true intent. Specifically, Appellants have already told this Court:

> Should the trial court enter a modified judgment curing the error briefed by Appellants, afterward Appellants will demonstrate the substantive error in the judgment by parsing through the entire record and all trial exhibits to demonstrate that the jury's finding that Sportscapers Construction did not breach the parties' contract should not be disturbed on the basis of the presentation of evidence at trial did not establish a breach of contract on Sportscapers' part so conclusively that reasonable minds could not differ as to the truth of the controlling facts.

---

[7] Of course, if this Court does remand to the trial court, Appellees will request an award for attorneys' fees and costs, which should have been included in the trial court's final judgment, and ask that the trial court increase their breach-of-contract damages to at least $27,026.

38

Appellants' Resp. to Appellees' Mot. to Dismiss and Motion to Extend the Time to File the Br. at 1. Appellants are misleading this Court, just as they misled the jury during closing argument. Respectfully, this Court should refuse to entertain Appellants' nonsense.

## PRAYER

For these reasons, Appellees Evelyn M. Mitchell and Douglas Brown ask that the Court affirm the trial court's final judgment awarding "the sums actually paid to Defendant Sportscapers Construction, Inc., … less the sums charged by Defendant Sportscapers Construction, Inc. for the services it rendered prior to the lawful termination of its services," and award them the attorneys' fees and costs incurred on appeal.

Respectfully submitted,

**BURFORD PERRY, LLP**

*/s/ Shawn A. Johnson*

_____

Shawn A. Johnson
State Bar No. 24097056
Robert R. Burford
State Bar No. 03371700
909 Fannin St., Suite 2630
Houston, Texas 77010
Telephone: (713) 401-9790
Facsimile: (713) 993-7739
sjohnson@burfordperry.com
rburford@burfordperry.com

39

## CERTIFICATE OF COMPLIANCE

As required by Tex. R. App. P. 9.4(i)(2)(B) and (3), I certify that the number of words in Appellee' Response Brief is 7,618. I relied on the computer program used to prepare the document for the word count.

*/s/ Shawn A. Johnson*

_____

Shawn A. Johnson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellees' Response Brief has been served on the following counsel of record by the manner indicated in accordance with Tex. R. App. P. 9.5(e), on March 20, 2018.

**BY ELECTRONIC SERVICE**
Troy Tindal
17225 El Camino Real, Suite 190
Houston, Texas 77058
troy@tindallawfirm.com
*Attorney for Appellants Sportscapers*
*Construction, Inc. and Roderick Thompson*

*/s/ Shawn A. Johnson*

_____

Shawn A. Johnson

# Rule 38 Appendix

# Appendix A

# Certified Records from the Texas Secretary of State



Rolando B. Pablos
Secretary of State

# Office of the Secretary of State

## Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that according to the most recent information in the records of this office the following persons are listed as managerial officials for Sportscapers Construction, Inc, a Domestic For-Profit Corporation, file number 801528286.

RODERICK  THOMPSON
PRESIDENT

8102 Sun Terrace
Houston
Tx - 77095

LESLIE  THOMPSON
VICE PRESIDENT

8102 Sun Terrace
Houston
Tx - 77095

SALARIES OFFICERS
PRESIDENT

8102 Sun Terrace
Houston
Tx - 77095

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on March 12, 2018.





Rolando B. Pablos
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB          TID: 10251          Document: 799536130003



## Office of the Secretary of State

### Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that the document, Certificate of Formation for Sportscapers Construction, Inc. (file number 801528286), a Domestic For-Profit Corporation, was filed in this office on December 31, 2011.

It is further certified that the entity status in Texas is in existence.

It is further certified that our records indicate RODERICK D. THOMPSON as the designated registered agent for the above named entity and the designated registered office for said entity is as follows:

6124 HWY. 6 NORTH, STE. 130

HOUSTON, TX - 77084  USA

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on March 12, 2018.





Rolando B. Pablos
Secretary of State

Come visit us on the internet at http://www.sos.state.tx.us/

Phone: (512) 463-5555
Prepared by: SOS-WEB

Fax: (512) 463-5709
TID: 10268

Dial: 7-1-1 for Relay Services
Document: 799536130003



# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

Sportscapers Construction, Inc.
Filing Number: 801528286

Public Information Report (PIR)

December 31, 2015

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on March 12, 2018.



Rolando B. Pablos
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555
Prepared by: SOS-WEB

Fax: (512) 463-5709
TID: 10266

Dial: 7-1-1 for Relay Services
Document: 799536130003

00029307944  Filing Number: 801528286

TX 2015    05-102
Ver. 6.0   (Rev.9-13/32)

# Texas Franchise Tax Public Information Report
To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ Tcode 13196

| ■ Taxpayer number | ■ Report year |
|---|---|
| 454122856 | 2015 |

You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at 1-800-252-1381.

Taxpayer name
**SPORTSCAPERS CONSTRUCTION INC.**

■ ☐ Check box if the mailing address has changed.

Mailing address
**8102 SUN TERRACE LANE**

Secretary of State (SOS) file number or Comptroller file number

| City | State | ZIP Code | Plus 4 |
|---|---|---|---|
| HOUSTON | TX | 77095 | |

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | | | |
|---|---|---|---|
| 8102 SUN TERRACE LANE | HOUSTON | TX 77095 | |
| Principal place of business | | | |
| 8102 SUN TERRACE LANE | HOUSTON | TX 77095 | |

**Please sign below!**

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

0454122856015

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | | Term expiration m m d d y y |
|---|---|---|---|---|
| RODERICK THOMPSON | President | ☐ YES | | |

| Mailing address | City | | State | ZIP Code |
|---|---|---|---|---|
| 8102 SUN TERRACE | HOUSTON | | TX | 77095 |

| Name | Title | Director | | Term expiration m m d d y y |
|---|---|---|---|---|
| LESLIE THOMPSON | Vice-President | ☐ YES | | |

| Mailing address | City | | State | ZIP Code |
|---|---|---|---|---|
| 8102 SUN TERRACE | HOUSTON | | TX | 77095 |

| Name | Title | Director | | Term expiration m m d d y y |
|---|---|---|---|---|
| Salaries: Officers | President | ☐ YES | | |

| Mailing address | City | | State | ZIP Code |
|---|---|---|---|---|
| 8102 Sun Terrace | HOUSTON | | TX | 77095 |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| NONE | | | |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| NONE | | | |

| Registered agent and registered office currently on file (see instructions if you need to make changes) | | | |
|---|---|---|---|
| Agent: | | ☐ Check box if you need forms to change the registered agent or registered office information. | |
| | City | State | ZIP Code |
| Office: | | | |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ | Title PRESIDENT | Date 09/15/2015 | Area code and phone number (713) 539-3248 |
|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE ☐ | PIR IND ☐ |
|---|---|

1022